JOHN W. AMOS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4476-62. Filed October 21, 1964.

*Fortescue W. Hopkins,* for the petitioner.
*W. B. Riley,* for the respondent.

OPINION

DAWSON, *Judge:* This proceeding is before us for disposition on the basis of separate motions for judgment on the pleadings filed by the parties. The sole issue posed by these motions is whether a judgment of conviction on a charge of willfully attempting to evade or defeat income tax by understating his income, submitting a false statement of his income, and by filing a false and fraudulent income tax return, is conclusive and binding on the convicted taxpayer so that in a subsequent proceeding in this Court the doctrine of collateral estoppel, or estoppel by judgment, is applicable to preclude him from denying that a part of the underpayment for the same taxable year is due to fraud.

All of the material facts necessary for resolution of this issue are established in the record by the allegations of fact and admissions contained in the respective pleadings of the parties, including the exhibits attached thereto. The parties have agreed that this case may be disposed of on the basis of the action taken upon the pending motions.

John W. Amos (hereinafter referred to as petitioner) is an individual residing at Hardy, in Franklin County, Va. His individual income tax returns for the calendar years 1955, 1956, 1957, and 1958 were filed with the district director of internal revenue, Richmond, Va.

During the years 1955 through 1958 petitioner was engaged in operating, as sole proprietor, a service station, an automobile repair garage, and a grocery business, all located at Hardy, Va. For each of these years he received income from such activities and he had no source of nontaxable income. Petitioner's gross receipts from business and his adjusted gross income were understated by him on the income tax returns which he filed for the years at issue. The adjusted gross income reported by petitioner on his income tax returns for the years 1955 through 1958, the corrected adjusted gross income, and the resulting understatements of adjusted gross income are as follows:

| Year | Adjusted gross income reported | Corrected adjusted gross income | Understatement of adjusted gross income |
|---|---|---|---|
| 1955 | $162.60 | $8,820.41 | $8,657.81 |
| 1956 | 2,081.64 | 7,869.80 | 5,788.16 |
| 1957 | 2,796.77 | 15,721.53 | 12,924.76 |
| 1958 | 1,488.85 | 10,220.41 | 8,731.56 |

By failing to correctly report his adjusted gross income in computing his tax liability (by the optional tax table) petitioner understated his Federal income tax liability for each of the taxable years 1955 through 1958 as follows:

| Year | Tax liability per return | Correct tax liability | Understatement of tax |
|---|---|---|---|
| 1955 | | $1,642.12 | $1,642.12 |
| 1956 | $78.45 | 1,374.15 | 1,295.70 |
| 1957 | 146.39 | 4,152.47 | 4,006.08 |
| 1958 | 50.25 | 2,077.87 | 2,027.62 |

Prior to the issuance of the statutory notice involved herein petitioner executed a waiver of restrictions on the assessment and collection of deficiencies in income tax for the years 1955, 1956, 1957, and 1958. Thereafter, but still prior to the issuance of the statutory notice, deficiencies in income tax were assessed and paid by petitioner in the amounts and for the respective years as follows:

| Year | Deficiency in income tax assessed and paid |
|---|---|
| 1955 | $1,642.12 |
| 1956 | 1,295.70 |
| 1957 | 4,006.08 |
| 1958 | 2,027.62 |

Subsequently, on August 28, 1962, a statutory notice of deficiency was sent to petitioner in which it was determined that there was due from him for each of the years 1955, 1956, 1957, and 1958, a deficiency in the 50-percent addition to the tax imposed under the provisions of section 6653(b) of the 1954 Code. The amounts of said deficiencies in the addition to the tax for each of such years (which amounts were based upon the deficiencies in income tax previously assessed and paid for such years in the respective amounts shown above) were as follows:

| Year | Deficiency in addition to the tax sec. 6653(b) |
| --- | --- |
| 1955 | $821. 06 |
| 1956 | 647. 85 |
| 1957 | 2, 003. 04 |
| 1958 | 1, 013. 81 |
| | 4, 485. 76 |

Petitioner is the same person who was the defendant in the criminal case of *United States of America* v. *John W. Amos*, criminal action No. 6466(R), in the U.S. District Court for the Western District of Virginia, Roanoke Division. The Commissioner of Internal Revenue, respondent herein, is a party in privity with the United States of America which was party plaintiff in the aforesaid criminal action 6466(R).

On February 12, 1962, at Danville, Va., the grand jury returned an indictment in the U.S. District Court for the Western District of Virginia charging in four separate counts that John W. Amos did willfully and knowingly attempt to evade and defeat a large part of the income taxes due and owing by him to the United States of America for the calendar years 1955, 1956, 1957, and 1958, by understating his income for said years, submitting false statements of his income for said years, and by preparing and causing to be prepared and filed false and fraudulent income tax returns for said years in which he knowingly understated the income tax due and owing by him for said years, in violation of the provisions of section 7201, I.R.C. 1954.[1]

On March 5, 1962, petitioner, as defendant, appeared in person and by counsel before the Honorable Ted Dalton, Chief U.S. District Judge for the Western District of Virginia, was arraigned, and entered a plea of not guilty to the charges set forth against him in the above indictment. He waived in writing his right to jury trial, pursuant to rule 23 of the Federal Rules of Criminal Procedure, and requested that he be tried by the court without a jury and that all questions of law and fact be submitted to the court for determination, which request the court granted.

---

[1] A true and correct copy of the indictment returned against petitioner in criminal action No. 6466(R) is a part of the record in this proceeding.

After a trial on the merits before Judge Dalton, sitting without a jury, the court rendered its findings of fact and conclusions of law, in which it held that the evidence established petitioner's guilt beyond a reasonable doubt and found petitioner guilty of violating the provisions of section 7201, I.R.C. 1954, with respect to the income tax returns filed by him for the years 1955, 1956, 1957, and 1958, as charged in the indictment. On March 5, 1962, the U.S. District Court entered its judgment of conviction against petitioner in criminal action No. 6466(R).[2] This judgment of guilt and conviction has never been modified nor has any appeal been noted or taken therefrom. It has therefore now become final and binding in effect upon petitioner.

The single issue here involved is whether the addition to tax for fraud prescribed by section 6653(b) of the Internal Revenue Code of 1954 should be imposed against petitioner for each of the years 1955, 1956, 1957, and 1958. This issue is the same as that presented, litigated, and determined adversely to petitioner in the prior criminal proceeding to the extent that both the imposition of the fraud penalty under section 6653(b) for the years 1955 through 1958 and the conviction for violation of section 7201 for the same years are each dependent upon findings of fact that petitioner did file false and fraudulent income tax returns for 1955 through 1958 with intent to evade tax and that as a result thereof he understated his tax for each of these years. In our view there is thus presented a classic situation for the application of the doctrine of collateral estoppel.

Collateral estoppel, or estoppel by judgment as it is often referred to, is an adjunct of the ancient judicial doctrine of res judicata.[3] While the two bear much in common, having derived from a singular purpose, they are by no means the same. Res judicata applies only to the *same* cause of action arising between the same parties. Its effect, where there has been a decision on the merits in a cause of action between two parties, is to preclude future litigation between those parties or persons claiming through them, "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which *might* have been offered for that purpose" in the prior proceeding. *Cromwell* v. *County of Sac*, 94 U.S. 351, 352 (1876). Collateral estoppel, on the other hand, applies in a *different* cause of action. It operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination

---

[2] A true and correct copy of this judgment of conviction is a part of the record in this proceeding.

[3] In the famous case of the Duchess of Kingston the rule was early laid down "that the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence conclusive, between the same parties, upon the same matter, directly in question in another court." *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355, 538 (H.L. 1776).

of which the finding or verdict [in the prior case] was rendered." *Cromwell* v. *County of Sac, supra.* Because a proceeding to enforce civil sanctions with respect to a particular tax presents a cause of action *different* from that which forms the basis of a prosecution to enforce criminal sanctions with respect to the same tax, *Helvering* v. *Mitchell*, 303 U.S. 391 (1938), it is the latter doctrine, rather than res judicata, which is involved in the instant case.

The rule governing the application of collateral estoppel to tax litigation has been stated by the Supreme Court to be as follows: "where a question of fact essential to the judgment is actually litigated and determined in the first tax proceeding, the parties are bound by that determination even though the cause of action is different." *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948). To this must be added the observation that collateral estoppel is not applicable to every fact which may have been determined in the first suit, or which may be an issue in the second suit. *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355, 538 (H.L. 1776). For the estoppel to apply to *conclusively* establish a fact in question, determination of that fact must have been necessary or essential to the result in the first suit and the fact in question must be an "ultimate" fact for determination in the second suit. For this purpose, "ultimate facts" are "those facts upon whose combined occurrence the law raises the duty or right in question," as distinguished from "evidentiary facts" or "mediate datum," which are those facts "from whose existence may be rationally inferred the existence of" an ultimate fact. *The Evergreens* v. *Nunan*, 141 F. 2d 927, 928 (C.A. 2, 1944), certiorari denied 323 U.S. 720.

Petitioner was previously convicted, on four counts, of violating section 7201 of the Internal Revenue Code of 1954.[4] That section makes it a felony for any person to "willfully" attempt "in any manner" to evade or defeat the payment of any tax imposed by title 26 of the United States Code.

As a first proposition, the indictment, of which petitioner was "adjudged" "guilty as charged," [5] specified as the "manner" in which he willfully attempted to evade his income taxes his preparing and filing false and fraudulent income tax returns wherein he knowingly understated his income and the tax thereupon. His conviction upon this

[4] SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX.

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

[5] Thereupon the court finds the following facts and renders the following conclusions of law:

(b) As to the issue of guilt: The court is of the opinion that the evidence establishes the defendant's guilt beyond a reasonable doubt and the court so holds.

It is, therefore, ADJUDGED that the defendant is guilty as charged and convicted.

indictment—alleging as an *essential* element of the offense charged the preparation and filing of false and fraudulent income tax returns wherein income and tax were knowingly understated—is a *conclusive* prior judicial determination of the *ultimate* fact that the returns thus prepared and filed *were* false and fraudulent and that the underpayments of tax resulting from such preparation and filing *were* due to fraud.[6] Secondly, it is our view that a criminal conviction based upon an indictment charging a willful attempt to evade or defeat a tax necessarily carries with it the ultimate factual determination that the resulting deficiency was "due to fraud." This is so because the term "willfully" as used in section 7201 has authoritatively been defined in prior judicial decisions to encompass all of the elements of fraud which are envisioned by the civil penalty described in section 6653(b).[7] "Willfully" within the purview of section 7201, comprehends a specific intent involving the bad purpose and evil motive to evade or defeat the payment of tax. *United States* v. *Murdock*, 290 U.S. 389 (1933); *Spies* v. *United States*, 317 U.S. 492 (1943); *Bloch* v. *United States*, 221 F. 2d 786 (C.A. 9, 1955). Thus, one who "willfully attempts * * * to evade * * * tax" within the meaning of the criminal sanction does so with the requisite fraudulent intent for the purpose of the civil sanction, since "the intent required [to bring into application the civil penalty] is the specific purpose to evade." *Mitchell* v. *Commissioner*, 118 F. 2d 308 (C.A. 5, 1941). What is more, we believe that "fraud is so inextricably woven into the term 'willfully' as it is employed in * * * [sec. 7201], that it is clearly an ingredient of the offense proscribed by that section. Only by creating unwarranted semantic distinctions could a contrary conclusion be reached." *Chanan Din Khan* v. *Barber*, 147 F. Supp. 771, 775 (N.D. Cal. 1957), affd. 253 F. 2d 547 (C.A. 9, 1958), certiorari denied 357 U.S. 920 (1958). See also *Tseung Chu* v. *Cornell*, 247 F. 2d 929 (C.A. 9, 1957).[8]

In the instant case imposition of the civil penalty prescribed by section 6653(b) depends upon a determination of the ultimate fact that petitioner's underpayment of tax for the years 1955 through 1958 was due to fraud. This ultimate fact for determination herein

---

[6] This finding in the prior criminal case was one of ultimate fact because the fact itself was elemental (i.e., necessary and essential) to a judgment of guilt of the offense charged. In contrast, a "mediate" fact within this context would be a fact merely *tending* to establish an essential element of the offense, rather than the essential element itself.

[7] SEC. 6653. FAILURE TO PAY TAX.

(b) FRAUD.—If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.

[8] While the cited cases involve deportation proceedings rather than tax litigation, they are pertinent here in light of the Supreme Court's holding in *Jordan* v. *DeGeorge*, 341 U.S. 223, 227–229 (1951), to the effect that fraud is the ingredient which makes a crime one involving "moral turpitude" as that term is used in the immigration laws. In consequence, an alien convicted of violating sec. 7201 of the 1954 Code would be liable to deportation. *Tseung Chu* v. *Cornell*, 247 F. 2d 929 (C.A. 9, 1957).

is the same ultimate fact which was determined adversely to petitioner in the prior criminal proceeding. It is therefore our decision that petitioner is conclusively bound, under the doctrine of collateral estoppel, by that prior adverse determination. *Tomlinson* v. *Lefkowitz*, 334 F. 2d 262 (C.A. 5, 1964), affirming an unreported case (S.D. Fla. 1962).

Petitioner, however, contends that such a decision is out of joint with the views which were previously expressed by us in the cases of *Eugene Vassallo*, 23 T.C. 656 (1955), and *Meyer J. Safra*, 30 T.C. 1026 (1958). In answer to this contention it is particularly appropriate to note that what was said by the Supreme Court in *Helvering* v. *Hallock*, 309 U.S. 106 (1940), applies with equal force to the Tax Court: "This Court, unlike the House of Lords, has from the beginning rejected a doctrine of disability at self-correction." Thus, a careful consideration of both these cases convinces us that while *Vassallo* may correctly have been disposed of on the basis of the inapplicability of res judicata, our refusal in *Safra* to apply the doctrine of collateral estoppel was erroneous.

In the *Vassallo* case we merely said, and correctly so, that—

It is clear that petitioner's conviction under section 145[(b)] of the Internal Revenue Code of 1939 [now section 7201, I.R.C. 1954] is not res judicata in these proceedings as to the fraud issue or as to the amount of tax allegedly due.

Of course, Vassallo's prior conviction for willful attempted income tax evasion was not *res judicata* as to the fraud issue in the civil proceeding, because, as we have taken pains to point out above, res judicata does not apply *where the cause of action is different*, even though the parties are the same. Limited as it is to a consideration of res judicata, rather than collateral estoppel, any further discussion of *Vassallo* is unnecessary.

On the other hand, some analysis of *Meyer J. Safra, supra*, is called for since we do not intend hereafter to adhere to that decision. In *Safra*, the taxpayer had previously been convicted of willful attempted income tax evasion for the years 1945 to 1948, inclusive. The Commissioner contended that in view of Safra's previous evasion conviction he was "collaterally estopped from litigating in the Tax Court the correctness of the respondent's action in determining additions to tax for fraud under section 293(b) of the 1939 Code [now substantially section 6653(b), I.R.C. 1954]." With respect to this contention it was observed that—

In *Helvering* v. *Mitchell*, 303 U.S. 391, the Supreme Court held that an acquittal in a United States District Court under an indictment charging the taxpayer with willfully attempting to evade or defeat tax under section 146(b) of the Revenue Act of 1928 was not a bar to the assessment by the respondent of an addition to tax for fraud under section 293(b) of the Revenue Act of

1928. The Supreme Court pointed out that sections 146(b) and 293(b) of the Revenue Act of 1928, providing penalties and additions to tax for criminal and civil fraud, are essentially different in character, were enacted for wholly different purposes, and differ widely in their language. To hold, therefore, as respondent contends, that a jury conviction for willful evasion of tax under section 145(b) of the Internal Revenue Code of 1939 estops the taxpayer from *petitioning the Tax Court* to redetermine the correctness of the respondent's action in determining additions to tax under section 293(b) of the Code would appear to be inconsistent with the holding of the Supreme Court in *Helvering* v. *Mitchell, supra.* [Emphasis supplied.]

In the instant case respondent does not contend, nor in reason could he contend, that application of the doctrine of collateral estoppel precludes the taxpayer "from *petitioning the Tax Court* to redetermine the correctness of" his action in asserting the section 6653(b) penalty. A priori, application of the doctrine of collateral estoppel is an *exercise* of the Court's jurisdiction because a determination that collateral estoppel applies, followed by a dismissal for lack of jurisdiction on that account, would frustrate the very policy upon which the doctrine is based; while the deficiencies could be assessed upon a dismissal for lack of jurisdiction, such a dismissal would not be a judgment on the merits which could be pleaded as a bar to a subsequent suit for refund, and thus lawsuits over matters once decided would be compounded rather than diminished.

What respondent does contend here is that under the doctrine of collateral estoppel a taxpayer who has been convicted of willfully attempting to evade his income taxes may not thereafter relitigate in this forum the question whether the tax deficiencies resulting from his previous attempted evasion were "due to fraud." Clearly, such a contention is not inconsistent with the principle laid down in *Helvering* v. *Mitchell, supra*, because the main thrust of that case was simply that an acquittal in a criminal proceeding wherein a *greater* burden of proof is required does not work an estoppel in a civil case dependent upon the same finding of fact, but wherein the burden of proof is lesser. Because an acquittal does not negative a fact in a subsequent suit wherein a *lesser* degree of proof is required, the same conclusion does not follow from the converse of such a situation, i.e., where the criminal trial resulted in a conviction. On the contrary, a conviction in a criminal case, wherein the Government is held to a more stringent burden of proof, would necessarily be dispositive of the same issue in a subsequent civil case wherein the burden of proof required is considerably less.

Our present view that the collateral estoppel issue in *Meyer J. Safra, supra*, was incorrectly decided has recently been buttressed by the opinion of the Court of Appeals for the Fifth Circuit in *Tomlinson* v. *Lefkowitz, supra*, a case turning upon *precisely* the same issue as the instant proceeding. There the critical question was stated to be

"whether a criminal conviction for willfully attempting to evade a tax necessarily carries with it a determination that the resulting deficiency was due to fraud with intent to evade the tax." The taxpayer took the position that it did not, relying principally upon our decision in *Safra* and incidentally upon the decision of the Supreme Court in *United States* v. *Scharton*, 285 U.S. 518 (1932). Commenting upon this position the Fifth Circuit observed that:

[In *Safra*] the Tax Court found that a criminal conviction for willfully attempting to evade did not work an estoppel on the issue of fraud in a suit on the civil penalty; this conclusion was reached because of certain language in *Helvering* v. *Mitchell, supra,* at 404–05 and n. 14. We do not believe that the Supreme Court's language in that case justifies such an interpretation. As indicated above, the Court held that there could be no estoppel on the question of fraud in a civil case resulting from an acquittal in a criminal case because of the different standards of proof involved. The Government had also objected that estoppel was inapplicable because of the difference in the issues presented, but the Court expressly stated, "Since there was not even an adjudication that Mitchell did not willfully attempt to evade or defeat the tax, it is not necessary to decide whether such an adjudication would be decisive also of this issue of fraud." *Id.* at 398. The language on which the Tax Court relied and which taxpayers here claim is decisive is found in a discussion of double jeopardy in which the Court concluded that the 50% fraud penalty is actually a civil sanction and, therefore, Mitchell was not put in double jeopardy. In a footnote, *id.* at 404 n. 14, the Court quotes language from the Board of Tax Appeals in the same case, to the effect that the civil and criminal sections are basically different in character and contain widely differing language which may require entirely dissimilar proof, to aid in distinguishing the nature of the two sections. We do not think this constitutes a recognition by the Supreme Court that a finding of fraud is not necessary to convict under section 145(b). Likewise, the case of *United States* v. *Scharton*, 285 U.S. 518 (1932), which held that a proviso extending to six years the statute of limitations on tax cases where fraud was involved did not apply to a willful attempt to evade a tax, does not control the question before us because the Court noted that required narrow construction of the proviso limited it to offenses where fraud was defined as an ingredient in the statute.

We observe that in contradistinction to the views expressed by the Fifth Circuit in *Lefkowitz* and our own as expressed herein, a U.S. District Court has recently held that a taxpayer's prior conviction for willful attempted evasion of income tax for the years 1955 through 1958 did *not* estop him from contesting the Government's counterclaim in a refund suit for the civil fraud penalties for those same years. *Moore* v. *United States*, 235 F. Supp. 387. (W.D. Va. 1964.) In so holding, the District Court stated that it was not disposed to follow *Lefkowitz*, but chose instead to predicate its decision upon our *Safra* case and the decision of the Supreme Court in *United States* v. *Scharton, supra.*

As we have stated, it is our intention no longer to adhere to the views expressed in *Safra* concerning the applicability of the doctrine of collateral estoppel to situations similar to that presented by the instant

case, and it is our belief that the present posture of the *Scharton* case requires no different result.

In *Scharton*, the Supreme Court had before it the case of a taxpayer who had been indicted for willfully attempting to evade his income tax, by means of filing false and fraudulent income tax returns, in violation of section 1114(b) of the Revenue Act of 1926. The indictment had been returned more than 3 but less than 6 years after commission of the alleged offenses. The applicable statute of limitations, section 1110(a) of the 1926 Revenue Act provided, in pertinent part, as follows:

No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense: *Provided*, that for offenses involving the defrauding or the attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, the period of limitation shall be six years * * *

Affirming dismissal of the indictment the Supreme Court stated (pp. 521–522):

statutes will not be read as creating crimes or classes of crimes unless clearly so intended, and obviously we are here concerned with one meant only to fix periods of limitations. Moreover, the concluding clause of the section, though denominated a proviso, is an excepting clause and therefore to be narrowly construed. * * * As the section has to do with statutory crimes it is to be liberally interpreted in favor of repose, and ought not to be extended by construction to embrace so-called frauds not so denominated by the statutes creating offenses.

Thus, placing the *Scharton* case in its proper perspective, it may accurately be said that there the sole concern of the Supreme Court was with criminal statutes of limitations. As, quite obviously, there is a requirement that these be narrowly construed, the result in *Scharton* may be interpreted in terms of its being dictated by strict principles of statutory construction which are not present and controlling in the instant case. Such was the view of *Scharton* taken by the Fifth Circuit in *Lefkowitz*, and with this view we are inclined to agree.

Moreover, if it be assumed that the narrow issue presented to the Court in *Scharton* was whether Congress must use the very word "fraud" in its definition of an offense before that offense will be considered as encompassing a fraudulent intent, then it must carefully be noted that in its decision the Court did not say that the offense of willful attempted evasion of tax does *not* encompass a fraudulent intent, but only that the excepting clause of section 1110(a) of the 1926 Revenue Act "ought not to be extended by construction to embrace so-called frauds *not so denominated* by the statutes creating offenses." This restrictive approach, in our opinion, has now been rejected by the Supreme Court.

In *United States* v. *Grainger*, 346 U.S. 235 (1953), several defendants, who had been indicted in 1952 under the false claims clause of the False Claims Act (now 18 U.S.C. sec. 287) for violations in 1945 and 1946 based upon false and fraudulent certificates filed with an agency of the Government, moved to dismiss the indictments on the ground, among others, that prosecution was barred by limitations. The District Court had granted the motions and dismissed the indictments, but on appeal, the Supreme Court reversed. The question was whether the general statute of limitations, 18 U.S.C. sec. 3282, providing a 3-year period of limitation barred prosecution, or whether its operation had been suspended by the Wartime Suspension Act, 18 U.S.C. sec. 3287, applicable to offenses "involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not." [9]  The defendants contended that the language in *Scharton* at pages 521–522, quoted *supra*, limited the Suspension Act "not merely to those offenses in which fraud upon the United States is an essential ingredient, but to such of those offenses as Congress has 'denominated' as 'frauds' by using that very word or, at least, one of its derivatives."  In answer to this contention, the Supreme Court stated (346 U.S. at 244) :

We believe Congress sought by its phrase "involving fraud * * * in any manner" to make the Suspension Act applicable to offenses which are *fairly identifiable* as those in which fraud is an essential ingredient, by whatever words they be defined, and that Congress did not seek to limit its applicability to such of those identifiable offenses *as also are labeled with a particular symbol.* [Emphasis supplied.]

We believe that the offense described in section 7201 is an offense which is fairly identifiable as one in which fraud is an essential ingredient, and we are persuaded by the *Grainger* case that the Supreme Court would so hold if it were faced with this issue today.

Petitioner's motion for judgment on the pleadings is denied. Respondent's motion for judgment on the pleadings is granted.

Reviewed by the Court.

> *An appropriate order and decision will be entered for the respondent.*

BRUCE, *J.*, dissents.

———

MULRONEY, *J.*, concurring: I desire to say a word to emphasize my complete agreement with the majority opinion.

It may well be this opinion is an extension of the doctrine of collateral estoppel in the sense that it would not be within the con-

---

[9] It is to be observed that this language is for all practical purposes the same as that contained in sec. 1110(a) of the Revenue Act of 1926 construed in *Scharton* to apply only to those offenses "in which defrauding or an attempt to defraud is an ingredient under the statute defining the offense."

cept of that doctrine as announced by the courts 50 years ago. But it is within the expanding scope of the doctrine as developed in more recent cases. An examination of the authorities shows the former limit of the doctrinal basis has received a practical extension. "Principles which perhaps stated the law correctly two decades ago no longer can be said to be valid. The key to preclusion now is not that certain parties have litigated, but rather that an issue has been adjudicated." Vestal, "Preclusions/Res Judicata Variables: Parties," 50 Iowa L. Rev. 27, 76.

---

WITHEY, J., dissenting: In my view the majority has here adopted as a rule of law a principle which has the effect of depriving *any taxpayer* who has been convicted under section 7201 of the 1954 Code, either by a jury or by a judge sitting without a jury, of his constitutional right to due process before being deprived of his property. This has been done through the use of the principle of collateral estoppel.

Long ago the Supreme Court in *Sunnen v. Commissioner*, 333 U.S. 591 (1948), cautioned against the use of this aid to the lessening of litigation particularly in tax cases. It was there said that "It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts *and applicable legal rules* remain unchanged." (Emphasis supplied.) It has been an accepted principle for many years that collateral estoppel is not applicable as between a criminal conviction and a civil issue. *United States v. Glidden Co.*, 119 F. 2d 235 (C.A. 6, 1941), certiorari denied 314 U.S. 678 (1941); *Ferroni v. United States*, 53 F. 2d 1013 (C.A. 7, 1931), certiorari denied 285 U.S. 543 (1932); *New York Life Insurance Co. v. Murdaugh*, 94 F. 2d 104 (C.A. 4, 1938); *Scientific Machine Co. v. Simmons*, 43 N.Y.S. 2d 376 (1943); *Stagecrafters' Club v. District of Columbia Division*, 111 F. Supp. 127 (D.C. 1953). In *United States v. Glidden Co., supra*, it was stated:

the rule prevails that a former adjudication in a criminal action is not generally a bar to a subsequent civil action, because of the different object of the proceedings and their dissimilarity in parties, rules of decision and procedure * * *

To now overturn this settled law in so sweeping a manner as has been done here seems to me the grossest kind of judicial legislation.

The very wording of the two statutes involved is clearly different and it has been held on good authority that conviction under the criminal does not necessarily constitute a conclusory finding of fraud as encompassed by the civil. *United States v. Scharton*, 285 U.S. 518 (1932); *Moore v. United States*, 235 F. Supp. 387 (W.D. Va. 1964); *United States v. Beard*, 118 F. Supp. 297 (D. Md. 1954). Indeed it

seems clear that a taxpayer might very well "willfully" avoid payment of his income tax without being guilty of the fraudulent intent envisaged by section 6653(b), I.R.C. 1954.

I think the precautionary language of the Supreme Court in *Sunnen* v. *Commissioner, supra,* is pertinent here because of the following fundamental factors. In civil tax fraud cases a deficiency must be found before a fraud penalty may attach inasmuch as to support the penalty there must be a prior determination that a part of a deficiency was due to fraud, while under the Criminal Code, sec. 7201, a deficiency need not be first determined in order that the defendant be convicted. In the civil action before this Court it well might be found that the deficiency determined by the Commissioner is not correct, that there is no deficiency, yet, under *Amos,* it would nevertheless be incumbent upon this Court to uphold the asserted fraud penalty because the taxpayer would be collaterally estopped to deny the same due to a prior conviction under the criminal section.

More important from a constitutional standpoint is the difference between the rules of evidence governing the two trials. The criminal trial involves the use of the stricter common law rules of evidence [1] under which evidence offered by the taxpayer might be rejected which evidence might well be admissible before the Tax Court [2] in the civil case.

Moreover it takes no great stretch of the imagination to understand the frustration of the principles of justice which might occur where one is convicted under the criminal section because, for instance, he could not there produce his books and records of account for reasons not chargeable to him when before the trial of the civil action, they became available and producible in evidence. Such books would then become admissible in this Court on the deficiency issue but would, under *Amos,* be inadmissible on the fraud issue. Because to prevail ordinarily on the fraud issue in this Court the Commissioner must first prove that his computation of the taxpayer's income required the use of a method extraneous of the taxpayer's books and records, to prevent him (the taxpayer) from introducing those books under the principle of collateral estoppel is to me clearly a deprivation of his property rights without his day in court.

The civil fraud penalty is assessable only as a result of the Commissioner's administrative determination. A fraud determination, like all additions to tax, has been made reviewable at the taxpayer's election by the Tax Court, the District Court, or the Court of Claims. *Flora* v. *United States,* 362 U.S. 145 (1960). The *Amos* result makes the

---

[1] Rule 26, Fed. Rules Crim. Proc., 18 U.S.C. 444.
[2] Sec. 7453, I.R.C. 1954.

Commissioner's severe administrative fraud determination nonreviewable in this Court simply because the same general events which gave rise to the penalty were found by another trier of fact to constitute a crime under a different section of the Code. The result reached by the majority in effect nullifies a specific right to judicial review which Congress has extended to taxpayers both under the Internal Revenue Code and section 10 of the Administrative Procedure Act, 60 Stat. 237, 243 (1946).

By the enactment of sections 6653(b) and 7201 of the Code, Congress has created two separate causes of action, rather than one, and it is my opinion that the taxpayer is entitled to have his day in court as to each cause of action separately. See *Helvering* v. *Mitchell*, 303 U.S. 391 (1938); *United States* v. *U.S. Gypsum Co.*, 51 F. Supp. 613 (D.C. 1943).

I think respondent's motion for judgment and decision on the pleadings should clearly have been denied.

PIERCE, *J.*, dissenting:

*I*

The decisions in the present case and in the concurrently considered case of *Arctic Ice Cream Co.*, 43 T.C. 68, involve a question of major importance regarding the jurisdiction and procedures of this Court in fraud cases. In the above cases the Court has adopted a new principle, contrary to that which we have applied in prior decisions, which in substance is: That where this Court has taken jurisdiction of a taxpayer's petition in a fraud case, pursuant to the statutory procedures prescribed by sections 6211–6216 of the Code (entitled "Deficiency Procedures in the Case of Income, Estate, and Gift Taxes") under which this Court has been given *exclusive* jurisdiction to approve or disapprove the Commissioner's administrative actions in determining deficiencies and civil penalties, this Court will by application of the doctrine of collateral estoppel, treat a prior conviction of the taxpayer in a criminal proceeding under section 7201 involving the same year, as being in itself *conclusive* that imposition of a claimed civil fraud penalty should be approved; and that thereupon this Court will be relieved of its function and duty of deciding, on the basis of all evidence that might otherwise be submitted to it, whether or not the Commissioner's administrative action in claiming such civil penalty is correct or erroneous.

This change of position by the Court is not supported by any change in the above-cited provisions of the statute which control the jurisdiction and procedures of this Court, or by any change in the Treasury regulations pertaining to said statutory provisions.

One of the effects of this change of position is: That if, in a particular criminal proceeding under section 7201 for the year involved,

the taxpayer is *acquitted*, then this Court will continue to hold (as it frequently has held under the doctrine of *Helvering* v. *Mitchell*, 303 U.S. 391 (1938)) that such acquittal *does not* effect a collateral estoppel against the Government; and that the Commissioner will therefore be left free to enforce through a second proceeding in this Court, a new claim for a civil fraud penalty. But, if on the other hand the taxpayer is *convicted* in such criminal proceeding, then under this Court's newly adopted principle, such conviction *will* effect a collateral estoppel against him; and he will be deprived of a trial on the merits of his petition to have this Court review and redetermine on the basis of all competent evidence submitted, whether or not the Commissioner's administrative action should be approved or disapproved. Thus it is clear that this Court's revised position will give the Government the benefit of a "one-way street."

Still another effect of this Court's new position will be: That where a taxpayer has pleaded guilty in a prior criminal proceeding, not with any intent to confess wrongdoing but as a procedural method for terminating the criminal case with a minimum expenditure of time and expense, he will thereafter, by reason of such conviction alone, be deprived of all opportunity to defend himself in our Court against a claim of the Commissioner for a civil penalty equal to *50 percent of the entire deficiency* involved, notwithstanding that most of such deficiency (which may be of very substantial amount) may be attributable to a legal issue that is in no way claimed to have resulted from fraudulent action on his part. Furthermore, he also will be deprived of any defense based on the statute of limitations; for the conclusive presumption of fraud which this Court will attribute to his prior conviction will, under the provisions of section 6501(c), eliminate any period of limitation on assessment and collection of the entire deficiency.

## II

The contrary prior position of this Court has been succinctly described in the opinion by Judge Murdock in the case of *Henry H. Epstein*, 34 B.T.A. 925 (1936). There the taxpayer, who had previously been convicted in a criminal proceeding, was charged by the Commissioner, in a notice of deficiency, with liability for a civil fraud penalty; and he then filed a petition with this Court for review and redetermination of such administrative action. The Court (then known as the Board of Tax Appeals) said:

The [criminal] court was not concerned with the [civil] penalties here involved.

The present proceeding before the Board is quite different from the criminal proceeding * * *. The Board has been established [by statute] to review the action of the Commissioner in determining deficiencies [and civil penalties]. It reviews and approves or disapproves this administrative act. If the Commissioner acted properly in determining the deficiency and claiming the penalty

in a case before the Board, the Board must affirm the administrative action of the Commissioner. * * * Payment [of the tax] is a matter between the Commissioner and the taxpayer which * * * does not change the duty of the Board to decide whether or not * * * [the] determination was correct. * * * The criminal proceeding does not relieve the Board of its function and duty to review the determination of the Commissioner. * * *

Decisions to the same effect were entered by this Court in *Meyer J. Safra*, 30 T.C. 1026 (1958), and in *Eugene Vassallo*, 23 T.C. 656 (1955). In each of these cases it was held that a prior conviction in a criminal proceeding *did not*, because of the differences in the character and purposes of a criminal proceeding, estop the taxpayer from obtaining a review by this Court of the Commissioner's administrative action in asserting the liability for a civil fraud penalty.

In my opnion, such prior position of this Court reflects more correctly and accurately than does the new position adopted in this case, the intent and purpose of Congress in its enactment of the above-mentioned provisions of the Code under which this Court has been given *exclusive* jurisdiction to review and to approve or disapprove administrative actions of the Commissioner in determining deficiencies and civil penalties. If Congress had intended either that liabilities for both the criminal sanction and a civil sanction should be conclusively determined in a single criminal proceeding, or that this Court's approval of the imposition of a civil sanction following a conviction in a criminal court should be automatic, it could easily have said so.

### III

In *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948), the Supreme Court has made it clear that both *res judicata* and *collateral estoppel* are judicial doctrines, designed to prevent repetition in the trial of issues; but that in the case of collateral estoppel, its application is subject to definite limitations. The Supreme Court said:

if *the very same facts and no others* are involved in the second case * * * the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the *relevant facts in two cases are separable*, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in a form *separable* from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make *an independent examination* of the legal matters at issue. *It may then reach a different result* or, if consistency in decision is considered just and desirable, reliance may be placed upon the ordinary rule of *stare decisis*. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding *must involve the same set of events or documents and the same bundle of legal principles* that contributed to the rendering of the first judgment. * * * [Emphasis supplied.]

It would thus appear from the foregoing that, in order for a second

court to be able to determine whether "the same set of events or documents" is involved in both cases so as to make available the doctrine of collateral estoppel, either the proceedings in both cases must be before the *same court;* or the second court must have before it, either by stipulation or otherwise, the evidence presented in the first case, for its examination as to whether "the very same facts and no others," and also "the same set of events or documents," are also the basis of the second proceeding.

In the instant case, this Court did not have before it the evidence presented in the criminal proceeding—notwithstanding the record herein discloses that the petitioner offered to make such evidence available by stipulation. Moreover, a copy of the indictment in the criminal proceeding involved in the instant case shows that, as to all taxable years involved, the amounts of the understatements of income which formed the basis for the criminal proceeding were greatly different from the amounts of the understatements of income reflected in a so-called net worth statement upon which the Commissioner relied to support his claim of fraud in the present case. These differences in amounts make it abundantly clear that "the very same facts and no others" and "the same set of events or documents," were not the basis for the fraud claims in both the cases.

## IV

In *Stagecrafters' Club* v. *District of Columbia Division of American Legion*, 111 F. Supp. 127 (1953), the District Court for the District of Columbia there dealt, in a well-considered opinion, with the problem of how a prior criminal conviction should be handled; and it then treated the problem as being *one of evidence*, rather than one for application of the doctrine of collateral estoppel. There, after considering and citing cases from several jurisdictions, the court found that "for many years the majority of courts have followed the general rule that a judgment in a criminal proceeding is not admissible in a civil action to establish any fact determined in the criminal trial"; but that in more recent years this "rigid rule" had been relaxed by some courts in particular situations. It then decided that, in the case before it, the prior conviction in a criminal proceeding should be admitted as *prima facie evidence* of the alleged unlawful act—thereby giving the convicted party an opportunity to present as rebuttal evidence, testimony or documents which had not been presented or might not have been available at the time of the criminal proceeding.

This Court, in previously decided cases, has similarly treated the problem as being one of *evidence;* and it has admitted proof of a prior conviction as being only one of the elements of all the competent evidence submitted to it, which is to be considered and weighed in deciding whether or not the Commissioner's administrative action

should be approved. It is significant that in at least two of such cases, the taxpayer was successful in overcoming the weight of the evidence as to the conviction. See *William Hendrick*, T.C. Memo. 1961–308; and *William J. Powers, Jr.*, T.C. Memo. 1962–5.

Based on all the foregoing, it is my belief that the decisions of this Court in the instant case and in the above-mentioned concurrently considered case of *Arctic Ice Cream Co.* are erroneous; and that in each of these cases, the Court should have held that the prior convictions of the petitioners in criminal proceedings did not relieve this Court of its function and duty to decide, on the basis of all the evidence which might be submitted to it, whether or not the administrative action of the Commissioner in claiming the civil penalty should or should not be approved.

DRENNEN, *J.*, dissenting: I agree with what is said in Judge Pierce's dissenting opinion and with most of what is said in Judge Withey's dissenting opinion. In addition I would add the following.

Section 7201 provides that any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall be guilty of a felony. Section 6653(b) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, the civil penalty shall be added. The language employed in section 6653(b) is considerably different than the language employed in section 7201, despite the fact that the language of the civil fraud provisions was changed when the Code was revised in 1954 (compare sec. 293(b) of the 1939 Code) and the fact that the language in section 6501(c)(2) of the 1954 Code, providing an exception to the statute of limitations for fraud, is quite similar to the language employed in section 7201. I am not sure that conviction of a willful attempt *in any manner* to evade *or defeat tax or the payment thereof* necessarily means that there was an underpayment of tax required to be shown on a return which was due to fraud as required in section 6653(b), or fraud with intent to evade tax as used in section 293(b) of the 1939 Code.[1] As pointed out by the majority, estoppel operates "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

SCOTT, *J.*, agrees with this dissent.

---

[1] The legislative history of sec. 6653(b) reveals no reason for the change in language from sec. 293(b).