SAGHIR A. ASLAM AND BUSHRA S. ASLAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aslam v. Commissioner
Docket No. 8243-78.
United States Tax Court
T.C. Memo 1981-159; 1981 Tax Ct. Memo LEXIS 580; 41 T.C.M. (CCH) 1217; T.C.M. (RIA) 81159; April 6, 1981. Larry R. Bemis, for the petitioners. Charles O. Cobb, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1969
$ 11,192.30
1970
7,550.00
1971
6,139.00
1972
3,313.00
Respondent also determined additions to tax under section 6653(b)[1] *582 with respect to petitioner Saghir A. Aslam as follows: Addition to Tax
Year
Sec. 6653(b)
1969
$ 5,595.15
1970
3,775.00
1971
3,069.00
1972
1,657.00
The issues presented for decision are: 1. Whether petitioner Saghir A. Aslam understated override commissions he received for the years 1969 through 1972 and, if so, the amounts thereof. 2. Whether petitioner Saghir A. Aslam realized income by reason of certain amounts paid for flowers, meals and office furniture by other persons with whom he did business and, if so, whether he is entitled to deduct all or part of such items as business expenses. 3. Whether any part of the underpayment of tax for each of the years 1969 through 1972 was due to fraud with intent to evade tax on the part of petitioner Saghir A. Aslam. 4. Whether the assessment of any deficiencies for the years 1969 through 1972 is barred by the statute of limitations. FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts and the exhibits attached thereto *583 are incorporated herein by this reference. Saghir A. Aslam and Bushra S. Aslam (petitioners) are husband and wife who resided in Costa Mesa, California, at the time they filed their petition in this case. They filed timely Federal income tax returns for the years 1969 through 1972 with the Internal Revenue Service Center at Ogden, Utah. On their joint Federal income tax returns for the years in issue the petitioners stated their gross income as follows: Year
Gross Income
1969
$ 19,248.30
1970
21,450.73
1971
23,616.00
1972
25,987.00
On April 12, 1978, respondent mailed a notice of deficiency to the petitioners covering the deficiencies and additions to tax for the years in issue. Saghir A. Aslam (hereinafter referred to individually as the petitioner) [2] was born in India. He lived there and in Pakistan until 1957 when he came to the United States. He became a citizen of this country in 1964. Petitioner attended college and received an Associate of Arts degree *584 in business in 1961. Petitioner became a fabrics buyer for Weinstock's in Sacramento, California, in 1962. While working there he became well-acquainted with Peter Klein, an experienced, successful and knowledgeable businessman. Mr. Klein was a fabrics seller who represented many manufacturers. The relationship between the petitioner and Peter Klein was close--like that of a father and son. It was one of trust and mutual respect. During the years 1969 through 1972 the petitioner was the fabrics buyer for the Broadway, a chain of 32 department stores. He received the following wages from the Broadway: Year
Wages
1969
$ 17,666.64
1970
19,333.28
1971
21,400.00
1972
20,000.00
In 1969 Peter Klein mentioned to petitioner the subject of sharing override commissions with him. Mr. Klein told him that he was willing to split with petitioner certain override commissions he received. An override commission is one paid by a manufacturer to a manufacturer's representative on overstocked inventory or other items which the manufacturer wants to move quickly. It is an additional incentive to the manufacturer's representative to push that particular merchandise *585 rather than the regular stock. During discussions with petitioner regarding the override commissions, Mr. Klein told him that he was in the 50 percent tax bracket and, because he was not deducting the 50 cents of each $ 1 of override commission that he was paying to petitioner, he was having to pay the government an additional 25 cents. Consequently, Mr. Klein proposed to reduce the 50 cents of each $ 1 paid to petitioner by 25 cents to cover the taxes which Mr. Klein was having to pay. Petitioner agreed to this arrangement. In the discussions Mr. Klein also told the petitioner that he was going to report as income on his Federal income tax return all of the override commissions he received, and that he was not going to deduct as a business expense any payments made to petitioner. Mr. Klein never deducted on any of his Federal income tax returns the override commission payments that he made to petitioner, notwithstanding that he reported all of the override commissions as his income on his tax returns. Mr. Klein told petitioner that he would pay the entire tax on the override commissions and that there would be no tax problem. When he made the various statements to petitioner *586 to the effect that he was paying all of the taxes on the override commissions, it was Mr. Klein's intention to infer that no additional tax would be owed by petitioner with respect to the override commissions. When Mr. Klein told petitioner that he needed to withhold 50 percent of the override commissions that he was paying to petitioner to cover Mr. Klein's income tax liability, petitioner did not object to such a withholding arrangement because he had trust and faith in Mr. Klein and believed what he said. As of 1969, Peter Klein had been in the fabric business for over 50 years and he did business with approximately 100 lawyers. He had other override commission payment arrangements with other buyers in New York and California. During the years 1969 through 1972 the petitioner saw Mr. Klein several times each year. On such occasions Mr. Klein made override commission payments to petitioner in either cash or by cashier's checks. Cash override commission payments received by petitioner from Mr. Klein were as follows: Year
Cash Payment
1969
$ 2,400
1970
2,400
1971
2,400
1972
2,400
Mr. Klein made the following override commission payments to petitioner *587 by cashier's checks: Date
Payee
Cashier's Check
September 26, 1969
National Bank
$ 4,000
of Pakistan
January 26, 1971
Saghir A. Aslam
2,700
February 19, 1971
Walston Company
2,235
June 9, 1972
Saghir A. Aslam
470
During each of the years 1969 through 1972 the petitioner did not believe that any of the money received from Peter Klein represented taxable income to him. He was told that the payments received from Mr. Klein were his taxable income by Larry R. Bemis, his attorney, when the Internal Revenue Service investigation began. In 1971 and 1972 Robert Bretter was a partner in Carlton Textiles, a Los Angeles based jobber and importer of fabrics. One of the customers of Carlton Textiles was the Broadway. It was in connection with sales by Carlton Textiles to the Broadway that Mr. Bretter came to know the petitioner. It is a common practice in the fabrics industry for a seller to create a "load factor" account, representing a certain percentage of the amount paid by a buyer for merchandise. The buyer can then draw against such account for markdowns, advertising and the like. The Broadway, in order to draw against its "load factor" account *588 at Carlton Textiles, would send Carlton a claim form for a certain amount stating the reason. The claim would be deducted from the Broadway's account. On several occasions, however, the petitioner approached Mr. Bretter for payment directly out of the Broadway's "load factor" account. Some of these requests were honored by Mr. Bretter and some were not. The following items were paid by Carlton Textiles by check at the direct request of the petitioner: Date
Payee
Amount
February 5, 1971
Flowers from Virginia's
$ 52.50
February 5, 1971
Old Virginia Steak House
90.85
June 1, 1971
Flowers from Virginia's
48.30
November 22, 1972
Ricky's Restaurant
167.50
December 6, 1972
Flowers from Virginia's
69.79
Jack Spiegel is the president of Spiegel Fabrics, a wholesaler of fabrics. One of Spiegel Fabrics customers was the Broadway. It was in the petitioner's capacity as a buyer for the Broadway that Mr. Spiegel knew the petitioner. In 1971 the petitioner approached Mr. Spiegel and requested that he pay for some office furniture to be purchased by the petitioner. Mr. Spiegel agreed and subsequently received an invoice for office furniture in the amount *589 of $ 1,979.25 from Alhambra Office Supply. The invoice was paid for with a Spiegel Fabrics' check in that amount dated April 1, 1971. The amount surprised Mr. Spiegel because the petitioner had originally indicated that the bill would be between $ 1,000 and $ 1,200. The items covered by the invoice from Alhambra Office Supply, a desk and chair, were delivered to the petitioner's home. However, the office furniture would not fit into the petitioner's home. Smaller and less expensive furniture was delivered to the petitioner and a refund check for the difference in price, $ 1,010.63, was issued to the petitioner by Alhambra Office Supply. No part of this refund was returned by the petitioner to Jack Spiegel or Spiegel Fabrics. The entire $ 1,979.25 represented taxable income to the petitioner. It was not a loan. Petitioner did not treat it as a loan, and there was no note executed by him or payments made to Jack Spiegel or Spiegel Fabrics. In 1972 the petitioner purchased several items of furniture from Tom Johnson and Son. This purchase was paid for by Morris Goodman Textile Co., Inc. by check dated October 21, 1972, in the amount of $ 1,228.50. Some of the items purchased *590 by the petitioner from Tom Johnson and Son were returned by him. A refund check in the amount of $ 461.64 was issued by Tom Johnson and Son to the petitioner. Morris Goodman Textile Co., Inc. also paid on behalf of the petitioner a bill from the Abbey Victoria Hotel in the amount of $ 25 in 1972. Both of the amounts paid by Morris Goodman Textile Co., Inc. constituted taxable income to petitioner in 1972. The office furniture acquired by petitioner and paid for by Spiegel Fabrics was placed in his office in his home and used in connection with his business activities which were undertaken in that office. During the years 1969 through 1972 the petitioner used one of five rooms in his apartment exclusively as an office in connection with his work as a buyer for the Broadway. His office in his home was used to take care of paperwork and to store samples. It was used at night and on weekends because he could not get into his office at the Broadway except during normal business hours. Petitioner paid rent of $ 250 per month for his apartment. The office furniture used by petitioner in his home office has an asset guideline useful life of 10 years. Petitioner cooperated *591 with the agents of the Internal Revenue Service during the course of their investigation and he voluntarily supplied them with various financial information, including data concerning his checking and savings accounts. Respondent did not make any bank deposits, cash expenditures or net worth analysis to support his determination that the petitioner received substantial amounts of cash payments from Peter Klein during the years in issue. On April 14, 1976, an indictment was filed in the United States District Court for the Central District of California charging the petitioner with violations of section 7201 of the Code for the years 1969 through 1972. The basis for the indictment was that the petitioner had understated his taxable income in each of those years. Petitioner was advised by his attorney, Larry R. Bemis, that he had a good defense in the criminal tax proceeding and that he should go to trial. Ultimately the petitioner chose not to proceed to trial, but to enter a plea of guilty with respect to the year 1972, because he was concerned about the effect of potential adverse publicity on his newly established retail fabric business. He thought that any newspaper publicity *592 would be detrimental to his business. Consequently, he elected to accept a negotiated plea. On July 19, 1976, upon a plea of guilty, a judgment of conviction was entered which found the petitioner guilty of attempting to evade and defeat his income tax for the year 1972 in violation of section 7201. Petitioner kept no records of his entertainment, promotion or other business expenses, and he claimed no such expenses on his Federal income tax returns. In his notice of deficiency dated April 12, 1978, respondent determined that the petitioner understated his taxable income as follows: Year
Amount
1969
$ 28,207.75
1970
21,411.24
1971
17,875.90
1972
10,810.79
ULTIMATE FINDINGS OF FACT 1. Petitioner understated his taxable income for the years in issue in the following amounts: Understatement
Year
of Income
1969
$ 6,400.00
1970
2,400.00
1971
9,505.90
1972
4,360.79
2. Petitioner failed to prove that he is entitled to any deductions for business expenses in connection with the payments made by Carlton Textile Company, Morris Goodman Textile Co., Inc. and Spiegel Fabrics, Inc. 3. Petitioner is entitled to deduct office-in-home *593 expenses of $ 600 for each of the years 1971 and 1972 and depreciation on his office furniture based upon a 10-year useful life. 4. No part of the underpayment of income tax for each of the years 1969, 1970 and 1971 was due to petitioner's fraud. 5. Petitioner is collaterally estopped to deny fraud for the year 1972, and therefore part of the underpayment of income tax for that year was due to fraud on his part. 6. The assessment of a deficiency for each of the years 1969 and 1970 is barred by the statute of limitations under the provisions of section 6501(a) of the Code. 7. For the year 1971 the petitioners omitted from their joint Federal income tax return gross income in excess of 25 percent of the amount of gross income stated on such return. Therefore, under section 6501(e)(1)(A) the assessment of a deficiency for that year is not barred by the 6-year period of limitations. 8. The assessment of a deficiency for the year 1972 is not barred by the statute of limitations under the provisions of section 6501(c)(1). OPINION Issue 1. Understatements of Override Commissions
Petitioner admits that he received override commission payments in cash and by *594 cashier's checks from Peter Klein during the years in issue. The principal dispute involves the amounts of the cash payments. Respondent, relying upon the testimony of Mr. Klein and his "ledger sheets," contends that the petitioner received substantial cash payments. To the contrary, petitioner claims that he received several times each year rather small amounts of cash, ranging from $ 200 to $ 600, from Mr. Klein. All in all, we are inclined to believe the petitioner's testimony regarding the cash payments. Therefore, we have found that he received $ 2,400 per year in cash. We regard his testimony as candid and credible. By contrast, the various checks, which respondent asserts were converted to cash by Mr. Klein and paid to the petitioner, were all payable to Peter Klein, the Bank of America or to cash. This evidence does not bridge the gap between the checks being payable to third parties or entities and the receipt by petitioner of all the money represented by such checks. In support of his contention that the petitioner received cash commission payments in the amounts testified to by Mr. Klein, respondent offered as corroborating evidence the "ledger sheets" kept by *595 Mr. Klein and certain commission statements from Davidson Adelphi Textiles, Inc. and Rube P. Hoffman Company. We think the so-called "ledger sheets" are in material respects confusing, inconsistent, contradictory and unreliable. [3] The commission statements contain nothing, other than notations by Mr. Klein, indicating that any of the commissions represented by such statements were in fact paid to petitioner. As reflected in our findings of fact, the petitioner did understate his income in 1969, 1971 and 1972 by the amounts of various cashier's checks. Issue 2. Additional Taxable Income and Claimed Business Expenses
These are primarily factual issues. We have found that the petitioner realized additional taxable income from three sources. First, Carlton Textiles paid $ 191.65 in 1971 and $ 237.29 in 1972 for petitioner's benefit *596 for flowers and restaurant expenses. Second, Spiegel Fabrics paid an invoice of $ 1,972.25 in 1971 from Alhambra Office Supply for office furniture for petitioner. Third, Morris Goodman Textile Co. paid $ 1,228.50 in 1972 to Tom Johnson and Son for furniture for petitioner. Petitioner failed to prove that any of the amounts received indirectly from Carlton Textiles or Morris Goodman Textile Co. are his ordinary and necessary business expenses. Based on the facts herein, we have concluded that for each of the years 1971 and 1972 the petitioner is entitled to deduct office-in-home expenses of $ 600 under section 162(a). See and compare Newi v. Commissioner, 432 F.2d 998, 1000 (2d Cir. 1970); Kirby v. Commissioner, T.C. Memo. 1980-194. [4] Petitioner is also entitled to a depreciation deduction under section 167(a) for the furniture used in his office during 1971 and 1972, based upon a useful life of 10 years. *597 Issue 3. Additions to Tax under section 6653(b)
Petitioner concedes that he is collaterally estopped from denying fraud and the imposition of the addition to tax under section 6653(b) for the year 1972 because of the judgment of conviction, based on his guilty plea, for violation of section 7201. See Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68 (1964); Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). But he contests respondent's fraud determination for the prior years. Fraud is not presumed. It must be proved by clear and convincing evidence. Carter v. Campbell, 264 F.2d 930, 935 (5th Cir. 1959); Green v. Commissioner, 66 T.C. 538, 549 (1976); Pigman v. Commissioner, 31 T.C. 356, 370 (1958). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Arlette Coat Co. v. Commissioner, 14 T.C. 751 (1950). *598 The existence of fraud is a question of fact to be resolved upon consideration of the entire record before us. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976). Neither gross negligence nor mere suspicion of fraud will suffice. Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), remanding 40 B.T.A. 424 (1939), on remand 45 B.T.A. 822 (1941); Ferguson v. Commissioner, 14 T.C. 846, 849 (1950). To establish fraud the Commissioner must show that the taxpayer beliberately intended to evade the payment of taxes, which he knew or believed he owed, by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner, supra at 310. The first and basic element of fraud is a fraudulent intent--a state of mind, which if translated into action, is calculated to cheat or deceive the government. This state of mind *599 may be expressed or be implicit in action, but its existence must be proved by the Commissioner by clear and convincing evidence. Here the alleged "fraud" is primarily the failure of petitioner to report as income certain override commissions that he received from Peter Klein during the years 1969 through 1972. Respondent has made other allegations that petitioner received some relatively small amounts of income in the form of expenses paid and furniture delivered to petitioner by companies with whom he did business. However, none of these other items of income, either standing alone or in combination with each other, would in our opinion be sufficient to support a finding of fraud with intent to evade tax. This case presents the unique and unusual circumstance where, on the crucial issue of intent, knowledge and willfulness, the testimony of Mr. Klein, the respondent's key witness, and that of the petitioner is the same. Mr. Klein's testimony supports the petitioner with respect to the nonexistence of fraud.
The crux of the fraud issue is to find out what was in the mind of the petitioner--whether he knew or believed he was committing a fraudulent act. Usually such evidence *600 is difficult to obtain except by what might be characterized as self-serving evidence by the person alleged to have committed fraud. But here we have the consistent testimony of Peter Klein as to what he said to petitioner, which statements establish the basis upon which petitioner formed his belief that the override commissions did not have to be reported on his Federal income tax returns. Mr. Klein first mentioned the subject of sharing override commissions with petitioner at a meeting held in 1969. At that time he told petitioner that he was going to report as income all the override commissions he received and that he was not going to deduct any of the override commission payments made to petitioner as business expenses on his individual Federal income tax returns. He also told the petitioner that he was paying all the income tax associated with the override commissions. Mr. Klein testified that he told petitioner there would be "no tax problem." He believed that there could be no double tax on the override commissions and that the petitioner would not have to report them as his income. Mr. Klein did, in fact, report as income on his Federal tax returns all of the override *601 commissions received by him from various manufacturers, and he never deducted on his returns any of the amounts he paid to the petitioner. Since there was a close relationship of trust and respect between petitioner and Mr. Klein, the petitioner believed what he was told, i.e., the taxes on all the override commissions were being paid by Mr. Klein. During discussions between petitioner and Mr. Klein prior to the first payment, Mr. Klein told petitioner that he was in the 50 percent tax bracket and, because he was not deducting the override commission he was paying to petitioner, he was having to pay the government additional income tax. He therefore proposed to reduce the amount of override commissions paid to petitioner by one-half, with Mr. Klein keeping one-half to pay the income tax liability which he was incurring on the override commissions. Since Peter Klein had explained to petitioner that he was paying all the income taxes on the override commissions, petitioner expressed no objection to such a withholding arrangement. Petitioner was in a lower tax bracket than Mr. Klein, and therefore more tax was actually paid by Mr. Klein than would have been paid by petitioner *602 if the transaction had been handled properly by Mr. Klein deducting the override commissions paid and the petitioner reporting the commissions as income on his returns. Consequently, we are unwilling to conclude that this arrangement between Mr. Klein and the petitioner was motivated by any thought of fraud or tax evasion. Moreover, the petitioner, a person unsophisticated in tax matters, had no knowledge that the money Mr. Klein was paying him as override commissions was taxable to him. He was first told by his attorney that the payments were taxable income to him when the Internal Revenue Service investigation began. See Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950). Accordingly, based on the testimony of the petitioner and Mr. Klein, as summarized above, we hold that the petitioner never had any intention to evade tax and never had any knowledge that the override commissions were required to be reported on his income tax returns. In his mind he believed that Peter Klein was paying all of the income tax on these commissions and that no additional tax needed to be paid by him. *603 Where, as here, understatements of taxable income are due to ignorance, honest error or negligence, there is no fraud. [5]
We also note that the petitioner cooperated with respondent's agents by providing them with his financial records. While this cooperation is a factor which mitigates against fraud, it is significant that, notwithstanding the availability of such records, respondent presented no evidence of a bank deposits, cash expenditures or net worth analysis to show that the petitioner received substantial cash allegedly paid to him by Mr. Klein. After carefully considering the testimony and documentary evidence contained in this record, we conclude that the respondent has failed to carry his burden of proving fraud by clear and convincing evidence for the years 1969, 1970 and 1971. Issue 4. Statute of Limitations
Absent fraud, the statute of limitations is a bar to the assessment and collection of deficiencies for the years 1969 and 1970. Section 6501(a). However, there is fraud as to the year 1972 resulting *604 from the application of the doctrine of collateral estoppel. The period for assessment is therefore open for that year. Section 6501(c)(1). With respect to the year 1971 the 6-year period provided for in section 6501(e)(1)(A) is applicable. The amount of gross income stated on the Federal income tax return for 1971 was $ 23,616. The amounts omitted from gross income, totaling $ 9,505.90, exceed 25 percent of stated gross income. Therefore, it is clear that the assessment and collection of the deficiency in petitioners' Federal income taxes for 1971 are not barred by the statute of limitations. To reflect the conclusions reached herein on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. Bushra S. Aslam is a party to this case only because she filed joint Federal income tax returns with the petitioner. All issues relating to this case involve only the petitioner.↩
3. In view of the inaccuracies and inconsistencies contained in the "ledger sheets," we doubt whether they were contemporaneous records. Moreover, some of the checks do not correspond with entries appearing on the "ledger sheets" and some entries are unaccounted for by Mr. Klein's testimony. We simply find the evidence unpersuasive.↩
4. The years involved herein are prior to the enactment of section 280A of the Tax Reform Act of 1976, Pub. L. 95-30, 90 Stat. 1520, 1569, which would preclude an office-in-home expense deduction under similar circumstances.↩
5. See and compare Estate of Kyler v. Commissioner, T.C. Memo. 1971-308; Rose v. Commissioner, T.C. Memo. 1974-91↩.