WOLFGANG AND MARTINE SCHACHENMAYR, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Schachenmayr v. Commissioner
Docket Nos. 4145-86, 4150-86, 4154-86, 4156-86
United States Tax Court
T.C. Memo 1991-281; 1991 Tax Ct. Memo LEXIS 323; 61 T.C.M. (CCH) 2963; T.C.M. (RIA) 91281; June 20, 1991, Filed *323 Decisions will be entered under Rule 155. William J. Dreyer, for the petitioners. Christopher B. Sterner, for the respondent. WELLS, Judge. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to tax as follows: Additions to Tax Under
Taxable
Sections [2]
Petitioner
Year
Deficiency
6653(b)
6654
Wolfgang and
Martine
Schachenmayr
1979
$ 25,652
$ 12,826
1980
24,617
12,309
Hans and Renate
Schachenmayr
1977
132,320
66,160
1978
44,949
22,475
1979
113,247
56,935
1980
160,429
80,215
Wolfgang
Schachenmayr
1977
1,756
[3] *324 878
63
1978
14,708
7,354
470
Taxable Year
Ended
H&W Motel
Corporation
March 31, 1977
46,438
23,219
March 31, 1978
61,799
30,900
March 31, 1979
34,623
17,311
March 31, 1980
41,676
20,838
After concessions, the issues for our decision are: (1) Whether respondent properly determined the additions to tax for fraud under section 6653(b), (2) whether the assessment and collection of taxes and additions to tax for the taxable years in issue are barred by the statute of limitations, (3) whether certain amounts, including bank deposits and interest on various bank accounts, constitute unreported income of the petitioners; and (4) whether petitioner Wolfgang Schachenmayr is liable for certain additions to tax for the years 1977 and 1978. FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulation of facts and accompanying exhibits are incorporated in this Opinion by reference. Petitioners Wolfgang and Martine Schachenmayr are married individuals who resided in Lake Placid, New York, on the date their petitions [4] were filed. Petitioners Hans and Renate Schachenmayr are married individuals who resided in Lake Placid, New York, on the date their petition was filed. Hans Schachenmayr and Wolfgang Schachenmayr are brothers, *325 and, during the years in issue, Hans Schachenmayr was the sole shareholder of petitioner H&W Motel Corporation (H&W Corporation), a corporation having its principal place of business in Lake Placid, New York, at the time its petition was filed. [5]
Hans Schachenmayr moved to the United States from West Germany in 1960. Having worked in West Germany as an apprentice butcher, apprentice cook, and apprentice waiter, Hans Schachenmayr obtained a job in the United States with KLM Royal Dutch Airline, which involved supervising a kitchen staff. Hans Schachenmayr worked for KLM for 7 years, after which time he became part owner of a restaurant. The restaurant venture failed within several months, after which time Hans Schachenmayr worked for several years as a sales manager for an import company in New York City. In 1970, Hans Schachenmayr moved to Lake Placid, New York, and *326 purchased a 50-percent interest in a motel and restaurant (the Adirondack Inn [6] and the Black Stallion Restaurant). Hans Schachenmayr's partner in the motel and restaurant venture was a Mr. Winfried Holderied, and in 1972, Hans Schachenmayr and Mr. Holderied formed petitioner H&W Corporation, to which they transferred the Adirondack Inn and Black Stallion Restaurant. In 1974, after litigation between Hans Schachenmayr and Mr. Holderied, and a mortgagee, Hans Schachenmayr purchased Mr. Holderied's interest in H&W Corporation and became its sole shareholder. During 1974, Hans Schachenmayr also incorporated U&H Enterprises and became its sole shareholder. U&H Enterprises purchased the real estate parcel directly in front of and contiguous to the Adirondack Inn in 1974. Ulrich Schachenmayr is a brother of Hans Schachenmayr and Wolfgang Schachenmayr who worked for International Business Machines (IBM) and resided in Munich, West Germany, during the years in issue. In 1974, Ulrich Schachenmayr executed a general power of attorney *327 form authorizing Hans Schachenmayr to act on his behalf regarding all matters. The power of attorney form was filed with the Clerk's Office, Essex County, New York, in 1979. Wolfgang Schachenmayr is an architect and construction engineer who obtained an engineering degree from the University of Munich in West Germany in 1970. After obtaining his degree, Wolfgang Schachenmayr worked for a well-known architectural firm in West Germany and was in charge of a project involving a city hall. Wolfgang Schachenmayr then served as site supervisor for a high school project. During 1974, Wolfgang Schachenmayr spent time in West Germany working on the construction of a home for his family, and in 1975, Wolfgang Schachenmayr moved to Montreal, Canada, where he again worked for an architectural firm. After being laid off from his job in Montreal, Wolfgang Schachenmayr moved to Lake Placid in 1976 and became intimately involved with Hans Schachenmayr in the operation and management of the Adirondack Inn and Black Stallion Restaurant. Renate Schachenmayr came to Lake Placid from West Germany in 1977 and married Hans Schachenmayr in that year. Renate Schachenmayr had attended high school and *328 secretarial school in West Germany and had worked as a secretary there but obtained little or no training in accounting and no bookkeeping experience. Upon marrying Hans Schachenmayr, Renate Schachenmayr commenced work at the Adirondack Inn. Her responsibilities eventually included bookkeeping for Hans Schachenmayr's hotel and restaurant business. As bookkeepter businesses. As bookkeeper, Renate Schachenmayr recorded expenses paid by check in a journal or ledger but recorded cash receipts and expenses on sheets of paper which were placed in a box for Hans Schachenmayr. Renate Schachenmayr never met the accountant, Mr. Henry Gelles, who prepared Hans and Renate Schachenmayr's 1977 and 1978 tax returns and the returns of H&W Corporation for its years ended March 31, 1977, March 31, 1978, and March 31, 1979. During the years in issue, 32 bank accounts (including nine C.D. accounts) were maintained in the names of one or more of the petitioners and their various businesses, and in the name of Ulrich Schachenmayr. Hans Schachenmayr was listed as having signature authority over all of the accounts in Ulrich Schachenmayr's name. Ulrich Schachenmayr never reported the interest income *329 on the accounts in his name to the West German taxing authorities, although West German law required interest earnings from U.S. sources to be reported, and no U.S. income tax returns have ever been filed by or on behalf of Ulrich Schachenmayr. Numerous transfers were made among the various business and personal accounts maintained by petitioners during the years in issue, and numerous deposits were made to such accounts either in cash or in traveler's checks which were endorsed with the payee sections left blank. By 1977, petitioners were aware that Lake Placid, New York, had been selected as the site of the 1980 Winter Olympics. Hans Schachenmayr decided that a fast food restaurant would have the potential for profitability in connection with the Olympics. During 1977, a restaurant building was constructed on the tract of land owned by U&H Enterprises, and Hans Schachenmayr borrowed $ 100,000 from a bank in West Germany for that purpose. Wolfgang Schachenmayr personally supervised the construction of the restaurant and acted as general contractor for the project. In order to obtain a contractor's discount for the construction materials, Wolfgang Schachenmayr operated under the *330 name Holiday Construction Company. The Steak and Burger Restaurant, which had been constructed by Wolfgang Schachenmayr, opened in 1978 and was operated by Hans Schachenmayr as a sole proprietorship, with Wolfgang Schachenmayr serving as manager. In addition to acting as general contractor and manager for the Steak and Burger Restaurant, Wolfgang Schachenmayr also supervised the construction of two personal residences on Mirror Lake (the Mirror Lake homes) in Lake Placid between 1978 and 1980. It was hoped by petitioners that the Mirror Lake homes could be rented out during the Olympic period, but they were not completed in time. One of the Mirror Lake homes was constructed on a tract of land the deed for which was recorded in Wolfgang Schachenmayr's name in 1976. The funds used to purchase that land came from a checking account in the name of H&W Corporation. By deed dated January 2, 1982, such land was transferred by Wolfgang Schachenmayr to Ulrich Schachenmayr. The transfer, however, was never recorded. The funds used to construct the home on this tract of land came primarily from a checking account in Wolfgang Schachenmayr's name (the 932 Account). When the home was completed, *331 however, Hans and Renate Schachenmayr moved in, and they continued to reside there as of the date of trial. The second Mirror Lake home was built on a tract of land the deed for which was recorded in Ulrich Schachenmayr's name in 1977. The funds utilized to purchase the underlying land, and the majority of funds utilized for the construction of that second home, came from the 932 Account. During 1980, when the second Mirror Lake home was completed, Wolfgang and Martine Schachenmayr moved in, and they continued to reside there as of the date of trial. An agreement entered into between Wolfgang and Martine Schachenmayr in November 1977, in anticipation of their marriage, recites that Wolfgang Schachenmayr is the owner of real property on Mirror Lake in Essex County, New York. Neither Wolfgang nor Martine Schachenmayr filed Federal income tax returns for 1977 or 1978. In 1980, Mr. Douglas Hoffman took over the accounting practice of Mr. Henry Gelles and became the petitioners' accountant. [7] Mr. Hoffman reviewed the books and records of Hans and Renate Schachenmayr and H&W Corporation and found that the main problem with such records was a lack of adequate documentation of cash receipts. *332 Mr. Hoffman specifically noted that the cash receipts journal did not reconcile with the bank deposits and bank statements he examined. Mr. Hoffman spoke to Hans and Renate Schachenmayr about the importance of keeping proper records and questioned Hans Schachenmayr about a reference in Mr. Gelles' work papers to approximately $ 200,000 which was noted as being "due to H.S." (an abbreviation which Mr. Hoffman assumed stood for "Hans Schachenmayr"). Hans Schachenmayr told Mr. Hoffman that Mr. Gelles must have improperly recorded such amount, as Mr. Gelles had been instructed that the amount had come from Maria Schachenmayr, Hans Schachenmayr's mother. Mr. Hoffman then changed the "H.S." to "M.S." so as to refer to Maria Schachenmayr. The Adirondack Inn, Black Stallion Restaurant, and Steak and Burger Restaurant were located directly across the street *333 from the Olympic Arena, which was the site of a number of events during the 1980 Olympics, and between 1977 and 1979, construction occurred in that area. In November 1978, a contract was entered into between Hans Schachenmayr, as president of H&W Corporation, and Bavarian Radio, which provided for the radio station's use of the Adirondack Inn facilities during the 1980 Olympics. The contract specifically required the radio station to make certain payments due thereunder to a "Postal Checking Account" maintained by Ulrich Schachenmayr in West Germany. In November 1978, pursuant to the terms of such contract, the radio station deposited $ 12,000 in German marks to Ulrich Schachenmayr's German postal checking account. That amount was not included in the gross receipts of H&W Corporation on its Federal income tax returns. The remaining amounts paid by the radio station for the use of the motel facilities included $ 70,914.93 in cash and a check in the amount of $ 53,698.25. The cash payments were excluded from the Federal income tax returns filed by H&W Corporation. An agreement was also entered into in December 1978 between Hans Schachenmayr, as president of H&W Corporation, and *334 the German Press Agency, providing for the press agency's use of the motel facilities during the Olympics. That agreement also required certain payments to be made (in German marks) to Ulrich Schachenmayr's German postal checking account, and the press agency deposited $ 4,000 to such account in 1979 and $ 5,808.15 to such account in 1980. The amounts deposited to Ulrich Schachenmayr's West German postal checking account by the press agency were also omitted from the gross receipts reported on the tax returns of H&W Corporation. The 1980 Winter Olympics took place in February, 1980. On February 28, 1980, Hans Schachenmayr requested a cashier's check in the amount of $ 99,500 payable to Ulrich Schachenmayr at the Royal Bank of Canada and mailed such check to Ulrich Schachenmayr in West Germany. On March 7, 1980 Ulrich Schachenmayr presented such check to a West German bank and requested that the bank transfer the amount of such check, less any service fees, back to Hans Schachenmayr in Lake Placid. The West German bank transferred $ 99,390 to Hans Schachenmayr, and such amount was deposited by Hans Schachenmayr in a C.D. account in the name of Ulrich Schachenmayr. In 1982, the *335 Internal Revenue Service commenced a criminal investigation of petitioners and Ulrich Schachenmayr. As a result of Hans and Wolfgang Schachenmayr's failure to provide certain requested documents and records, a summons was served on Hans Schachenmayr pursuant to section 7602 directing him to provide respondent with records reflecting H&W Corporation's income during the years involved in the instant case. Due to Hans Schachenmayr's failure to comply with the summons, respondent commenced a proceeding to compel compliance in the U.S. District Court for the Northern District of New York and obtained an order directing such compliance. The records produced by Hans Schachenmayr regarding the use of the motel facilities during the Olympics by the radio station and press agency included invoices indicating that $ 28,760 had been paid by the press agency and that $ 62,129.55 (including a check for $ 53,698.25) had been paid by the radio station. On or about September 25, 1986, Hans Schachenmayr, Renate Schachenmayr, Wolfgang Schachenmayr, and Ulrich Schachenmayr were indicted by a grand jury in the U.S. District Court for the Northern District of New York on charges including conspiracy *336 to obstruct the collection of tax by the United States Government, wilfully and knowingly attempting to defeat income tax liability, and wilfully subscribing false corporate income tax returns. On or about January 29, 1987, Hans Schachenmayr and Wolfgang Schachenmayr pleaded guilty to counts IV and VII of the indictment, which charged each of them, respectively, with violations of section 7201 for the year 1980. The section 7201 charge against Renate Schachenmayr was dismissed. A warrant for the arrest of Ulrich Schachenmayr on charges arising from the indictment remains outstanding, but U.S. officers have been unable to arrest Ulrich Schachenmayr as a result of his residence in West Germany. During the tax years in question, petitioners reported the following amounts as taxable income and tax liability on the Forms 1040 and 1120 filed with respondent: Hans and Renate Schachenmayr
Taxable Year
Taxable Income [8]
Tax Liability
1977
$  2,173.00
- 0 - 1978
20,188.20
$ 1,433.70
1979
7,910.96
623.08
1980
2,084.11
161.89
Wolfgang Schachenmayr (individually)
Taxable Year
1977
no return filed
1978
no return filed
Wolfgang and Martine Schachenmayr *337 Taxable Year
1979
5,199.00
- 0 -
1980
4,381.65
- 0 -
H&W Corporation
Year Ended
March 31, 1977
(9,916.32)
- 0 -
March 31, 1978
(165.80)
- 0 -
March 31, 1979
- 0 -  - 0 -
March 31, 1980
(16,454.19)
- 0 -
Due to the inadequacy of the books and records maintained by petitioners, respondent's agents utilized the bank deposits method of proof in conducting their examination to determine the gross income of petitioners during the years in issue. Petitioners do not disagree with the methodology used by respondent's agents in computing their omitted gross receipts and, except as discussed below, agree with the quantitative results of respondent's bank deposits analysis. At the initial interview of petitioners conducted by Agent Bruno of the IRS Criminal Investigation Division in connection with the bank deposits analysis, Agent Bruno questioned petitioners about certain deposits which he could not link specifically with taxable sources of income. Agent Bruno was told by Wolfgang Schachenmayr that funds had been obtained from his wealthy mother, Maria Schachenmayr, who lived in West Germany. Later, however, Hans Schachenmayr and Wolfgang Schachenmayr indicated that they had also received funds from their brother, *338 Ulrich Schachenmayr. In order to verify these stated nontaxable sources, Agent Bruno, through respondent's foreign operations office in Washington, D.C., sent a collateral request to the Republic of West Germany. In response to such request, an investigation was conducted by Mr. Wolfdietrich Hermenau, an investigator for the West German taxing authorities. Mr. Hermenau's investigation, which was based in part on the tax returns filed by Ulrich Schachenmayr and Maria Schachenmayr, indicated that they had disposable income during the years in issue as follows: Disposable Income
Maria Schachenmayr
Ulrich Schachenmayr
1977
$ 12,045
$ 19,537
1978
8,628
24,141
1979
33,317
29,489
1980
14,204
32,383
OPINION
1. Additions to Tax for Fraud
The first issue we must decide in the instant case is whether respondent has established the propriety of the section 6653(b) addition to tax for fraud for each taxable year in issue and against each petitioner. The resolution of such issue will determine whether respondent may be barred by the statute of limitations from assessing and collecting certain of the amounts in dispute. [9] *339 Respondent has the burden of proving fraud by clear and convincing evidence. Habersham-Bey v. Commissioner, 78 T.C. 304, 310-311 (1982). Respondent must establish by clear and convincing evidence both (1) that there was an underpayment of tax for each taxable year in issue and (2) that at least some part of such underpayment was due to fraud. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). (a) Proof of Understatements by Petitioners
Initially, we focus on the requirement that respondent prove underpayments for each taxable year. [10] Petitioners point to specific sources to explain the deposits in issue, namely, that the majority of such deposits consisted of family loans from Maria Schachenmayr and/or Ulrich Schachenmayr, or funds from Ulrich Schachenmayr which were being held to construct homes for Ulrich Schachenmayr. With respect to certain other items, petitioners claim that amounts have been attributed to the wrong taxpayer *340 or belonged to someone other than the petitioners. Respondent's position is that the investigation conducted by Mr. Hermenau establishes that neither Ulrich Schachenmayr nor Maria Schachenmayr had the financial resources to lend or otherwise transfer the funds in question to petitioners. Respondent also has noted various inconsistencies in the explanations offered by petitioners. Finally, respondent asserts that petitioners' motel and restaurant businesses constituted likely taxable sources for the deposits. In response to respondent's assertions, petitioners argue *341 that Mr. Hermenau's investigation did not uncover certain assets owned by Maria Schachenmayr, in part because the proceeds from the sale of such assets during the years in question were not reported to the West German taxing authorities. Petitioners also argue that their motel and restaurant businesses were in dire financial straits during the years prior to the Olympics because of the construction which took place adjacent to their properties, and that the deposits in issue could not have come from such businesses. The bank deposits forming the crux of the instant case, and the petitioner(s) with respect to whom respondent has attributed such amounts as income, are as follows: Hans and Renate Schachenmayr
Bank Deposits
Account No.
Amount
Date
08500036
48,000.00
November 16, 1977
06500215
6,763.85
January 24, 1977
08500036
35,000.00
March 15, 1978
06503730
41,620.00
March 15, 1979
08500747
38,880.00
February 6, 1979
08500747
40,000.00
September 18, 1980
13558
99,390.00
March 1980
H&W Corporation
Bank Deposits
Account No.
Amount    Date
Various
$ 57,450.00 Various 1977
13558
* *342 99,390.00 March 1980
06501992
20,000.00 October 19, 1976
08500747
* 38,880.00 February 6, 1979
Wolfgang and Martine Schachenmayr
Bank Deposits
Account No.
Amount Date
06220932
$ 13,800 Various 1978
06220932
34,080 Various 1979
06220932
16,779 Various 1980
For the reasons discussed below, we find that respondent has clearly and convincingly proved underpayments of tax by Hans and Renate Schachenmayr for taxable years 1977 through 1980, by H&W Corporation for its taxable years ended March 31, 1977, March 31, 1979, and March 31, 1980, by Wolfgang Schachenmayr for taxable year 1978, and by Wolfgang and Martine Schachenmayr for taxable years 1979 and 1980. Hans and Renate Schachenmayr - 1977 Deposits
Among the bank deposits attributed as income to Hans and Renate Schachenmayr for taxable year 1977 are a deposit in the amount of $ 48,000 used to open an account in the name of Ulrich Schachenmayr and a deposit in the amount of $ 6,763.85 made to an account in the name of Hans Schachenmayr *343 and Ulrich Schachenmayr. We find that respondent has clearly and convincingly proved that such deposits constituted unreported income of Hans and Renate Schachenmayr for taxable year 1977. Petitioners assert that the $ 48,000 deposit consisted of a loan from Ulrich Schachenmayr to Hans Schachenmayr. Respondent's "disposable income" analysis by Mr. Hermenau indicates that Ulrich Schachenmayr had only $ 19,537 in disposable income during such year and thus could not have made such a loan. Petitioners argue, however, that the $ 48,000 was not made available to Hans Schachenmayr directly by Ulrich Schachenmayr, but was provided indirectly through Mr. Hans Nisser, who sent such money to Hans Schachenmayr at Ulrich Schachenmayr's request in repayment of prior loans from Ulrich Schachenmayr. Although Mr. Nisser testified at trial concerning his repayment of loans from Ulrich Schachenmayr, we found his testimony concerning the origin of the $ 48,000 of minimal, if any, probative value. Mr. Nisser is the brother-in-law of Hans Schachenmayr, Wolfgang Schachenmayr, and Ulrich Schachenmayr. In addition to the potential bias arising from his relationship to petitioners, Mr. Nisser's testimony *344 was contradictory. At one point, Mr. Nisser stated that he had ordered a $ 48,000 check made payable to the Adirondack Inn to be shipped to Ulrich Schachenmayr, but did not know how the money entered the United States. At another point he stated that he had sent the $ 48,000 to the United States himself. Mr. Nisser's excuse for lack of documentary evidence of the transaction was that German banking records are destroyed by German banks after 10 years. Such excuse does not explain petitioners' failure to obtain such records from the German bank subsequent to the commencement of respondent's investigation (which began in 1982) but prior to 1987. In addition, Mr. Nisser's testimony concerning loans he had received from Maria Schachenmayr detracted from his credibility as a witness. Mr. Nisser testified that he had borrowed money from Maria Schachenmayr over the years, but could not specify how much or when. In short, we simply do not believe petitioners' assertion that Ulrich Schachenmayr called due amounts loaned to Mr. Nisser over the years so as to lend those amounts to Hans Schachenmayr. Respondent further argues, and we agree, that the characterization of the $ 48,000 as a *345 loan from Ulrich Schachenmayr to Hans Schachenmayr is inconsistent with the fact that Hans Schachenmayr deposited such funds in an account in the name of Ulrich Schachenmayr. We find that Ulrich Schachenmayr was not the source of the $ 48,000. A second deposit attributed as income to Hans and Renate Schachenmayr during taxable year 1977 was a deposit in the amount of $ 6,763.85 placed in a savings account in the name of Hans Schachenmayr and Ulrich Schachenmayr. Petitioners assert that such amount constituted income of H&W Corporation which was included in the corporation's return and which was placed in a personal savings account only because Hans Schachenmayr was told by the bank that a corporation could not open a savings account. We find such assertion lacking in credibility, as the record shows that Hans Schachenmayr maintained a savings account during taxable year 1977 for his other corporation, U&H Enterprises, at the same bank to which the deposit in question was made. Petitioners' assertion is rendered even more unbelievable by the fact that the account into which the deposit was made was in the name of both Hans Schachenmayr and Ulrich Schachenmayr, rather than simply *346 Hans Schachenmayr, who was the sole shareholder of H&W Corporation. We find that the $ 6,763.85 constituted unreported income of Hans and Renate Schachenmayr for taxable year 1977. Hans and Renate Schachenmayr - 1978 Deposits For their 1978 taxable year, respondent attributed as income to Hans and Renate Schachenmayr a cash deposit in the amount of $ 35,000 made to an account in the name of Ulrich Schachenmayr. In the stipulation of facts submitted by the parties, petitioners reserved the right to present evidence at trial establishing that such deposit constituted "funds from Ulrich Schachenmayr," presumably in the form of a loan. At trial, however, Hans Schachenmayr testified that the $ 35,000 came from his mother, Maria Schachenmayr. Petitioners offer no explanation for such inconsistency. See Rule 91(e). Respondent's disposable income analysis, moreover, demonstrates that neither Ulrich Schachenmayr nor Maria Schachenmayr had the resources to lend Hans Schachenmayr $ 35,000 during taxable year 1978. Petitioners' assertion that Maria Schachenmayr obtained additional disposable income through her private sale of accumulated gold and her receipt of the proceeds of private loans, *347 which amounts were not reported to the West German taxing authorities or revealed to Mr. Hermenau, does not detract from respondent's analysis; the only persons called to testify as to Maria Schachenmayr's alleged "wealth" were Hans Schachenmayr and Mr. Nisser, neither of whom presented any specific figures or documentary evidence. As noted above, Mr. Nisser could not specify a single loan made to him by Maria Schachenmayr and, when asked how much gold Maria Schachenmayr supposedly had inherited from her father, Hans Schachenmayr said that he did not know. Moreover, we are not impressed with petitioners' argument that Hans Schachenmayr's ability to obtain a $ 100,000 loan from a West German bank with Maria Schachenmayr's cosignature is proof of Maria Schachenmayr's wealth; Hans Schachenmayr's need to borrow from a bank cuts against his assertion regarding Maria Schachenmayr's wealth and willingness to lend money to her children, and the West German bank simply may have wanted a West German resident to cosign Hans Schachenmayr's note. We find that the $ 35,000 in cash constituted unreported income of Hans and Renate Schachenmayr for taxable year 1978. Hans and Renate Schachenmayr *348 - 1979 Deposits
Among the deposits attributed as income to Hans and Renate Schachenmayr for taxable year 1979 was a cash deposit in the amount of $ 41,620 used to open an savings account in the name of Ulrich Schachenmayr. As in the case of the $ 35,000 deposit discussed above, the stipulation of facts submitted by the parties indicated that petitioners would present evidence that the amount represented funds from Ulrich Schachenmayr, but Hans Schachenmayr's testimony at trial was that such amount was derived from his mother. Petitioners' only "explanation" for such discrepancy is their vague assertion that all of Maria Schachenmayr's children (including Ulrich Schachenmayr) borrowed money from her, and that Hans Schachenmayr generally had the right to use money from Ulrich Schachenmayr's accounts so long as it was paid back. Such assertion is an insufficient explanation of the contradiction between the stipulation of facts and petitioners' trial testimony. Respondent's disposable income analysis, moreover, indicates that Maria Schachenmayr had only $ 33,317 in disposable income for 1979 (which income would have to have been used at least in part to meet her own living expenses *349 during that year). We find that the $ 41,620 in cash constituted unreported income of Hans and Renate Schachenmayr for taxable year 1979. [11]
Hans and Renate Schachenmayr - 1980 Deposits
Hans Schachenmayr pled guilty to a violation of section 7201 for taxable year 1980, in connection with his filing of the joint return for himself and Renate Schachenmayr. Although such conviction collaterally estops Hans Schachenmayr from denying fraud for such year, Stone v. Commissioner, 56 T.C. 213, 221 (1971), Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965), Renate Schachenmayr is not so estopped by Hans Schachenmayr's conviction. Stone v. Commissioner, supra at 223; Rodney v. Commissioner, 53 T.C. 287, 310-311 (1969); *350 Quantz v. Commissioner, T.C. Memo 1990-39. Thus, in order to lift the bar of the statute of limitations pursuant to section 6501(c) as against Renate Schachenmayr, respondent must prove that Renate Schachenmayr committed fraud for taxable year 1980. The effect of collateral estoppel is to prevent Hans Schachenmayr from asserting otherwise, but collateral estoppel does not in itself supply any proof. Rodney v. Commissioner, supra at 309. We find that respondent has proved the existence of underpayments with respect to Hans and Renate Schachenmayr's return for taxable year 1980. More specifically, respondent determined that a $ 40,000 cash deposit made to an account in the name of Ulrich Schachenmayr constituted unreported income of Hans and Renate Schachenmayr for taxable year 1980. As in the case of the deposits of $ 35,000 and $ 41,620 discussed above, the stipulation of facts indicated that petitioners would show the $ 40,000 to have come from Ulrich Schachenmayr, but Hans Schachenmayr testified at trial that such amount came from Maria Schachenmayr. Respondent's disposable income analysis furthermore indicates that Maria Schachenmayr had only $ 14,204 in disposable income during *351 taxable year 1980. [12]
H&W Corporation - Deposits for Taxable Year Ended March 31, 1977
Among the deposits attributed to H&W Corporation as income for its taxable year ended March 31, 1977, were deposits into various accounts totalling $ 57,450, which petitioners assert constitute loans from Maria Schachenmayr. As noted above, Maria Schachenmayr's disposable income analysis indicates that she possessed only $ 12,045 in disposable income for the calendar year 1977, and petitioners have not suggested that her disposable income was higher during 1976. Further detracting from petitioners' claim as to the origin of the $ 57,450 is the testimony of petitioners' accountant, Mr. Hoffman, who stated that he changed the "H.S." to an "M.S." on the workpapers maintained by their prior accountant for H&W Corporation so as to reflect this amount as a loan from Maria Schachenmayr. Such method of recording a purported *352 loan lacks credibility, and the altered notation is the only "evidence" of the purported loan. Moreover, the fact that some amount was later transferred to Maria Schachenmayr on Mr. Hoffman's advice that interest should be paid on family loans does not enhance the credibility of petitioners' explanation; petitioners appear to have been quite willing to transfer funds among accounts in the name of the various family members. [13] We also note that the fact that Hans Schachenmayr told Mr. Hoffman about the purported loan from Maria Schachenmayr before the investigation by respondent's agents had commenced does not add credence to petitioners' assertion; soon after receiving advice from Mr. Hoffman about proper documentation of cash receipts, petitioners failed to disclose at least $ 60,000 in cash receipts to Mr. Hoffman. We therefore find that the $ 57,450 constituted unreported income of the H&W Corporation for taxable year ended March 31, 1977. H&W Corporation - Deposits *353 for Taxable Year Ended March 31, 1978
Respondent's bank deposits analysis for H&W Corporation's taxable year ended March 31, 1978, indicated that H&W Corporation had omitted gross receipts totalling approximately $ 122,000. Prior to trial, respondent conceded that $ 100,000 of that amount constituted nontaxable proceeds of a loan from the Bayerische Zentral Bank (the loan for which Maria Schachenmayr had cosigned). Petitioners in turn conceded an understatement of gross receipts in the amount of $ 5,659.05 by virtue of cash expenditures. The other items noted in respondent's notice of deficiency for the corporation's taxable year ended March 31, 1978, have been settled by mutual concessions of the parties, and respondent has made no argument concerning the approximately $ 16,000 in gross receipts remaining after subtraction of the conceded items from the original $ 122,000 in omitted gross receipts. Although the concessions by petitioners establish the existence of an understatement for the corporation's taxable year ended March 31, 1978, we find, as discussed below, that respondent has failed to prove fraud for such year. H&W Corporation - Deposits for Taxable Year Ended March *354 31, 1979
As found above, Hans Schachenmayr on behalf of H&W Corporation entered into contracts with a radio station and press agency for the use of the Adirondack Inn facilities during the Olympics. During H&W Corporation's tax year ended March 31, 1979, the radio station and press agency made cash downpayments totalling $ 16,000 to Ulrich Schachenmayr's postal checking account in West Germany, none of which was reflected in the corporation's returns for such year. [14] Respondent has thus clearly and convincingly proved the existence of an understatement of $ 16,000 for such year. A deposit in the amount of $ 38,880 to an account in the name of Ulrich Schachenmayr has also been attributed as income to H&W Corporation for its taxable year ended March 31, 1979, as corporate income diverted to the personal use of its shareholder. See Truesdell v. Commissioner, 89 T.C. 1280 (1987). Petitioners argue that such amount consisted of funds from Ulrich Schachenmayr earmarked *355 for the construction of the Mirror Lake homes for Ulrich Schachenmayr. Respondent's disposable income analysis, however, indicates that Ulrich Schachenmayr did not have sufficient resources to expend such funds during the period in question. Moreover, the bank records submitted into evidence in the instant case indicate that approximately $ 15,000 of the $ 38,880 subsequently was transferred during 1979 from Ulrich Schachenmayr's account into an account in the name of H&W Corporation, rather than into the 932 Account (which petitioners claim was used for construction expenses of the Mirror Lake homes). We find that the $ 38,880 constituted unreported income of H&W Corporation for its taxable year ended March 31, 1979. H&W Corporation
Understatements for Taxable Year Ended March 31, 1980
The parties have stipulated that $ 70,914.93 in cash was received for a radio station's use of the motel facilities during the 1980 Olympics, which amount was not reported on the returns of H&W Corporation. Respondent has clearly and convincingly proved the existence of underpayments by H&W Corporation for its taxable year ended March 31, 1980. [15] *356 Wolfgang Schachenmayr - 1978 Deposits <16> Respondent has asserted that a series of cash deposits to the 932 Account, totalling $ 13,800, constitute unreported income of Wolfgang Schachenmayr for taxable year 1978. Petitioners assert that those deposits constituted funds from Ulrich Schachenmayr which were earmarked for construction of the Mirror Lake homes to be owned by Ulrich Schachenmayr. [16]
Although respondent's disposable income analysis for Ulrich Schachenmayr indicates that Ulrich Schachenmayr had over $ 13, 800 in disposable income for taxable year 1978, we find that respondent has sufficiently negated petitioner's assertion as to the nontaxable source of the deposits. The stipulation of facts submitted by the parties indicated that petitioners would present evidence that the $ 13,800 constituted funds from Ulrich Schachenmayr. On direct examination, however, Wolfgang Schachenmayr testified *357 that he could not remember the source of such deposits. Wolfgang Schachenmayr's testimony concerning the 932 Account was replete with inconsistencies; he testified at one point that he opened up the 932 Account and put it in the name "W. Schachenmayr" for his own bookkeeping purposes (to segregate amounts to be used for the construction of the Mirror Lake homes) but also testified that Hans and Renate Schachenmayr were the persons responsible for making deposits to such account. Moreover, although Wolfgang Schachenmayr testified that the 932 Account was used exclusively to build homes for Ulrich Schachenmayr, the record reveals that over $ 60,000 of the funds deposited to that account during the taxable years in issue came from accounts which were not in Ulrich Schachenmayr's name, but which were in the names of petitioners or their various businesses, and that 115 travelers' checks with the payee sections left blank were deposited in that account. The underlying premise of petitioners' assertions regarding the 932 Account is that the Mirror Lake homes were being built for Ulrich Schachenmayr; however, the 932 Account was not placed in the name of Ulrich Schachenmayr, as were other *358 accounts allegedly containing Ulrich Schachenmayr's money. Another weakness in petitioners' assertions concerning the 932 Account and the Mirror Lake homes is the fact that the homes were never occupied by Ulrich Schachenmayr, but were occupied by Hans Schachenmayr, Wolfgang Schachenmayr, and their spouses from the time they were built, without any "rental agreements" other than an understanding that such persons would pay all expenses associated with the homes. Finally, a prenuptial agreement between Wolfgang and Martine Schachenmayr which was submitted by petitioners into evidence states that Wolfgang Schachenmayr owned real property on Mirror Lake. The $ 13,800 in question consisted of the following separate cash deposits to the 932 Account: Date of Cash Deposit
Amount
September 6, 1978
$  1,000
September 25, 1978
2,000
September 28, 1978
5,000
October 4, 1978
2,000
October 6, 1978
2,900
December 11, 1978
900
Total
$ 13,800
The timing of such cash deposits is more consistent with respondent's assertions -- that the cash was being diverted from petitioners' motel and restaurant business -- than with petitioners' assertions that Ulrich Schachenmayr provided the money for construction of the Mirror *359 Lake homes. See Drinkhouse v. Commissioner, 225 F.2d 874, 875 (2d Cir. 1955), affg. a Memorandum Opinion of this Court (deposits made by restauranteur in bills of small denominations support inference of income). We find that the $ 13,800 constituted unreported income of Wolfgang Schachenmayr for taxable year 1978. Wolfgang and Martine Schachenmayr - 1979 Deposits
A series of cash deposits totalling $ 34,080, and made as follows to the 932 Account, has been attributed to Wolfgang and Martine Schachenmayr as unreported income for taxable year 1979: Date of Cash Deposit
Amount
February 2, 1979
$  1,000
February 15, 1979
3,000
June 13, 1979
100
September 18, 1978 5,000
October 5, 1979
4,980
October 22, 1979
5,000
October 30, 1979
10,000
November 31, 1979
5,000
Total
$ 34,080 Petitioners argue that Ulrich Schachenmayr was the source of the above deposits, which were to be used for the construction of his Mirror Lake homes. Respondent's disposable income analysis, however, indicates that Ulrich Schachenmayr had less than $ 34,080 in disposable income for taxable year 1979 and, even if that were not the case, we would find that respondent had negated petitioner's assertion for the reasons discussed above *360 with respect to taxable year 1978. Accordingly, we find that the $ 34,080 constituted unreported income of Wolfgang and Martine Schachenmayr for taxable year 1979. Wolfgang and Martine Schachenmayr - 1980 Deposits
Wolfgang Schachenmayr pleaded guilty to a violation of section 7201 with respect to his joint return for taxable year 1980. Wolfgang Schachenmayr thus is collaterally estopped from denying fraud for such year. Stone v. Commissioner, 56 T.C. 213, 221, (1971); Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). However, as discussed above in connection with Hans and Renate Schachenmayr's return for such year, respondent must prove fraud as to Martine Schachenmayr in order to lift the bar of the statute of limitations pursuant to section 6501(c)(1) as against her. For taxable year 1980, respondent has attributed as income to Wolfgang and Martine Schachenmayr $ 16,779 in cash deposits to the 932 Account. As in the case of the $ 13,800 and $ 34,080 deposits discussed above, such amount is made up of smaller cash deposits made over a period of time, and petitioners argue that the funds were used to build the homes for Ulrich Schachenmayr. At trial, *361 however, when asked about the source of the deposits, Wolfgang Schachenmayr could say only that the cash deposits were made by "either Ulrich, Hans or Renate." For the reasons discussed above, we find that the $ 16,779 constituted unreported income of Wolfgang and Martine Schachenmayr for taxable year 1980. We have considered all of petitioners' arguments in reaching the above conclusions regarding the understatements by petitioners. A significant portion of the testimony offered by petitioners at trial was aimed at proving that petitioners' motel and restaurant businesses were in poor financial condition during the years in issue (due to Olympic construction) and could not have generated the amounts in dispute. We found such testimony of little or no probative value due to its lack of specificity. Petitioners introduced no documentary evidence concerning room rates or occupancy percentages for the motel; the sole "evidence" concerning room rates came from the testimony of Renate Schachenmayr, who did not purport to do anything other than estimate such rates based upon faded recollections. Renate Schachenmayr's testimony concerning motel occupancy percentages during the years in *362 issue was also inherently unreliable; she testified that her records for taxable years 1981 through 1987 indicated that occupancy percentages steadily increased during those years and then merely extrapolated back (in the absence of records) to estimate occupancy percentages for 1977 through 1980. Furthermore, petitioners offered no quantitative evidence of any kind relating to the funds generated by their restaurant businesses, which included a bar at the Black Stallion Restaurant. We found petitioners' unsupported assertions that their motel was unattractive to visitors because of dust and dirt from Olympic construction quite unpersuasive; although Renate Schachenmayr testified that she did not recall any Olympic construction workers staying at their motel, we fail to see how the proximity of the construction site to petitioners' businesses would not have brought some amount of business to the restaurants and bar, if not the motel. In short, notwithstanding the testimony offered by petitioners in an effort to demonstrate that their motel and restaurant businesses were failing during the years in issue, we find it more likely that the sums in issue were generated by such businesses *363 than that such sums came from the sources pointed to by petitioners. (b) Proof of Fraudulent Intent
The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Estate of Pittard v. Commissioner, 69 T.C. 391 (1977); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. at 105-106. The intent to conceal or mislead may be inferred from *364 a pattern of conduct. See Spies v. United States, 317 U.S. at 499. Courts have relied on a number of indicia of fraud in deciding section 6653(b) cases. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam a Memorandum Opinion of this Court; Beaver v. Commissioner, 55 T.C. at 93. A pattern of underreporting income over an extended period of time is indicative of fraud. Foster v. Commissioner, 391 F.2d 727, 733 (4th Cir. 1968), affg. on this issue a Memorandum Opinion of this Court; Brooks v. Commissioner, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. 1130 (1988). Respondent cannot rely on the taxpayer's failure to prove error in respondent's determination *365 to meet his burden of proving fraud. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. at 106; Pigman v. Commissioner, 31 T.C. 356, 370 (1958). In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court, the Ninth Circuit Court of Appeals gave a nonexclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. Such "badges of fraud" would include: (1) Understatement of income, (2) maintenance of inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, and (6) failure to cooperate with tax authorities. The Ninth Circuit in Bradford further stated that the existence of the following facts supported our finding of fraudulent intent: (1) The taxpayer's engaging in an illegal activity, (2) his attempt to conceal such activity, (3) his dealing in cash, and (4) his failing to make estimated tax payments. In the case of a joint return, both spouses may not be held liable for the fraud addition unless respondent proves that some part of the underpayment was due to the fraud of each spouse. Sec. 6653(b); *366 Stone v. Commissioner, 56 T.C. at 227-228. A corporation can act only through its officers, and corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. Hicks Co. v. Commissioner, 56 T.C. 982 (1971), affd. 470 F.2d 87 (1st Cir. 1972). To prevail on the fraud issue, respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Based on the record in the instant case, we find that respondent has clearly and convincingly proved the existence of understatements due to fraud with respect to Hans and Renate Schachenmayr's returns for all taxable years in issue, with respect to H&W Corporation's returns for taxable years ended March 31, 1977, March 31, 1979, and March 31, 1980, with respect to Wolfgang Schachenmayr for taxable year 1978 (for which year no return was filed), and with respect to Wolfgang and Martine Schachenmayr's joint returns for taxable years 1979 and 1980. *367 A majority of the "badges of fraud" listed in Bradford are present in the instant case. As detailed above, we have found that respondent has clearly and convincingly proved that petitioners underreported income in at least the following amounts during the years in issue: Hans and Renate Schachenmayr
1977
-
$ 54,763.85
1978
-
35,000   1979
-
41,620   1980
-
40,000   H&W Corporation
Year Ended
March 31, 1977
-
$ 57,450   March 31, 1979
-
54,880   March 31, 1980 -
70,914.93
Wolfgang Schachenmayr
1978
-
$ 13,800
Wolfgang and Martine Schachenmayr
1979
-
$ 34,080
1980
-   16,779
Such consistent and significant understatements of income constitute evidence of fraudulent intent. Gromacki v. Commissioner, 361 F.2d 727 (7th Cir. 1966), affg. a Memorandum Opinion of this Court; Kalil v. Commissioner, 271 F.2d 550 (5th Cir. 1959). Petitioners also kept inadequate records during the years in issue, especially with respect to cash receipts. While certain expenses were recorded in a ledger, Renate Schachenmayr noted cash items only on "pieces of paper." Petitioners' accountant, Mr. Hoffman, testified as to the discrepancy he discovered between petitioners' bank statements and their records of cash receipts, and Agent Bruno *368 testified regarding his need to resort to the bank deposits method in order to reconstruct petitioners' income. Wolfgang Schachenmayr's fraudulent intent is suggested by his failure to file a return for taxable year 1978. [17] Although the record contains more evidence of fraud on the part of Hans and Renate Schachenmayr than on the part of Wolfgang Schachenmayr, the parties have stipulated that Wolfgang Schachenmayr was "intimately involved in the operation and management of the Adirondack Inn and Black Stallion Restaurant" and was manager of the Steak and Burger Restaurant, and we find that respondent has clearly and convincingly proved fraud as against Wolfgang Schachenmayr. Petitioners' explanations with regard to certain transactions also suffered from inconsistency, and, in certain instances implausibility. As noted above, the testimony of Hans Schachenmayr contradicted the stipulation of facts in several instances, and Wolfgang Schachenmayr was unable to confirm the source indicated in the stipulation of facts with respect to deposits to the 932 Account. Agent *369 Bruno also testified that Hans and Wolfgang Schachenmayr altered their story so as to include Ulrich Schachenmayr as a nontaxable source of funds after Wolfgang Schachenmayr had cited their mother as the source. We found implausible Hans Schachenmayr's story, discussed below, about the $ 99,500 which was transferred to Ulrich Schachenmayr right after the Olympics and immediately transferred back to Hans Schachenmayr, less bank service charges. The fifth badge of fraud listed in Bradford, concealment of assets, also is present in the instant case. As discussed above, we have found that amounts deposited in accounts in the name of Ulrich Schachenmayr (including a "postal checking account" maintained overseas) [18] constituted unreported income of petitioners. We find such use of accounts maintained in the name of a nonresident alien individual to be concealment. We also disbelieved petitioners' assertions concerning Ulrich Schachenmayr's ownership of the Mirror Lake homes and find the placing of such homes in Ulrich Schachenmayr's name indicative of concealment. Petitioners' numerous transfers of funds among their numerous bank accounts also suggest concealment. Moreover, Hans and Wolfgang *370 Schachenmayr refused to voluntarily produce records requested by Agent Bruno, and Hans Schachenmayr refused to comply with the summons issued by respondent for such records, forcing respondent to obtain a court order compelling such compliance. See Truesdell v. Commissioner, 89 T.C. 1280, 1303 (1987) (interference with Government's investigation suggests intent to conceal); Wedvik v. Commissioner, 87 T.C. 1458, 1470 (1986). In response to such order, Hans Schachenmayr submitted, among other things, invoices which documented only a portion of the amounts received from the radio station and press agency for the use of the motel facilities during the Olympics. Finally, the record is replete with evidence of petitioners' dealings in cash; the majority of the deposits considered above (and proved by respondent to constitute unreported income) were made in cash. In addition, Renate Schachenmayr unabashedly testified as to her receipt of $ 60,000 in $ 100 bills for the use of the motel facilities during *371 the Olympics, her failure to report such amount as income, and her compensation of employees in cash during the Olympics without payment of employment taxes. Although we need not rely on collateral estoppel in the instant case as evidence of fraudulent intent, we note that the convictions of Hans Schachenmayr and Wolfgang Schachenmayr for violations of section 7201 during 1980 supply the requisite fraudulent "intent" with respect to such taxpayers and such taxable year. Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). In light of the foregoing evidence, we find that respondent was justified in determining the additions to tax for fraud under section 6653(b) against Hans and Renate Schachenmayr for all of the taxable years in issue, against Wolfgang Schachenmayr for taxable years 1978, 1979, and 1980, and against H&W Corporation for taxable years ended March 31, 1977, March 31, 1979, and March 31, 1980. Respondent failed to offer "clear and convincing" evidence of Martine Schachenmayr's participation in the income-concealing activities of the petitioners. Of the 32 bank accounts in evidence in the instant case, Martine Schachenmayr had signature authority *372 with respect to only one account. The only evidence of Martine Schachenmayr's fraudulent intent offered by respondent is the fact that certain cash deposits were made to that account and certain amounts transferred from the account to an account in the name of H&W Corporation. Respondent appears to recognize the thinness of such evidence, having admitted on brief that Martine Schachenmayr participated in petitioners' fraudulent activities "to a lesser extent" than Wolfgang Schachenmayr. Because respondent has failed to convince us that Martine Schachenmayr acted with fraudulent intent, we find that she may not be held liable for the additions to tax for fraud. We similarly find insufficient evidence of fraud regarding H&W Corporation's return for taxable year ended March 31, 1978. For such year, petitioners conceded the following items prior to trial: Item
Amount   Insurance expense
$ 1,302   Travel and entertainment expense
1,179   License and fee expense
1,065   Provision of auto, meals, and
6,000   lodging to Hans and Wolfgang
Schachenmayr
Depreciation
206   Cash expenditures (bank deposits
5,659.05
reconstruction)
Respondent conceded certain amounts related to the items above and also *373 conceded that, of the approximately $ 122,000 in bank deposits attributed to the corporation as income for such year, $ 100,000 constituted nontaxable proceeds of a loan from a West German bank. Respondent made no argument, however, concerning the approximately $ 16,000 in unexplained bank deposits remaining after subtraction of the conceded items (i.e., the $ 100,000 loan and the $ 5,659.05 in cash expenditures) from the original $ 122,000 bank deposits figure. Notably lacking from the record with respect to H&W Corporation's taxable year ended March 31, 1978, are bank deposits too substantial to be omitted through mere oversight or made to accounts in the name of Ulrich Schachenmayr so as to suggest concealment. The largest single item originally determined by respondent to have constituted unreported income has been conceded by respondent to have been a loan, and the array of other items conceded by petitioners are not, on their face, suggestive of fraud. If the mere existence of understatements of income or improper deductions were enough to establish fraud, "all taxpayers against whom deficiencies are determined would be guilty of fraud and subject to the imposition of a fraud *374 penalty." Nicholson v. Commissioner, 32 B.T.A. 977, 989 (1935), affd. 90 F.2d 978 (8th Cir. 1937). We do not find enough evidence of fraud to warrant such addition against H&W Corporation for taxable year ended March 31, 1978. (2) Statute of Limitations
Section 6501(c)(1) provides: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." The proof required from respondent to trigger the exception to the general period of limitations set forth in section 6501(c)(1) is the same as that which respondent bears under section 6653(b). Asphalt Industries, Inc. v. Commissioner, 384 F.2d 229, 232 (3d Cir. 1967), revg. on other grounds 46 T.C. 622 (1966); Stratton v. Commissioner, 54 T.C. 255, 289 (1970); Neaderland v. Commissioner, 52 T.C. 532, 541 (1969), affd. 424 F.2d 639 (2d Cir. 1970). As we have found that H&W Corporation is not liable for the additions to tax under section 6653(b) for taxable year ended March 31, 1978, the statute of limitations bars respondent from assessing and collecting the tax from the corporation for such year. The bar *375 of the statute of limitations is, however, lifted under section 6501(c)(1) as against the other petitioners for the other years for which fraud has been established.[19] We note in that regard that, although we have found inadequate evidence of fraud on the part of Martine Schachenmayr to hold her liable for the additions to tax for fraud under section 6653(b), the bar of the statute of limitations is nonetheless lifted as against Martine Schachenmayr with respect to the collection of any underlying deficiencies arising out of her joint returns with Wolfgang Schachenmayr. Section 6501(c)(1) is couched in terms of a false and fraudulent "return" with intent to evade tax, Vannaman v. Commissioner, 54 T.C. 1011, 1018 (1970), and it is well established that the bar of the statute of limitations is lifted as against both spouses through a finding that their joint return contained understatements due to fraud. Stone v. Commissioner, 56 T.C. 213, 227-228 (1971); Quantz v. Commissioner, T.C. Memo 1990-39. Respondent has proved fraud with respect to the joint returns of Wolfgang and Martine Schachenmayr for taxable years 1979 and 1980, and respondent thus is not barred by the statute of limitations *376 from collecting any underlying deficiencies from Martine Schachenmayr. (3) Amount of Deficiencies
Having considered the issue of fraud first because of its impact on the statute of limitations, we may turn to the underlying deficiencies in issue. Unlike in the case of fraud, with respect to which respondent bears the burden of proof, petitioners bear the burden of proof with respect to the deficiencies determined in respondent's notices of deficiency. Rule 142(a). We find that petitioners have failed to overcome the presumption of correctness that attaches to respondent's notices of *377 deficiency with respect to any of the items in issue. The majority of the items that were not conceded prior to trial have been considered in our discussion regarding respondent's proof of underpayments under section 6653(b). A few comments are necessary regarding certain other items with respect to which petitioners have presented evidence or made arguments. With regard to Hans and Renate Schachenmayr's taxable year 1977, petitioners offered the testimony of Mr. Joseph O'Sullivan, a part-time tax consultant and investigative accountant who had previously worked for the intelligence division (which later became the criminal investigation division) of the Internal Revenue Service. Mr. O'Sullivan testified that he had reviewed the bank deposits analysis done by Agent Bruno and had concluded that an additional $ 7,000 (consisting of a $ 2,000 and a $ 5,000 deposit to a savings account in the name of Wolfgang Schachenmayr or Hans Schachenmayr) should be treated as a transfer item rather than as income for such year. We found Mr. O'Sullivan's very brief testimony inadequate to meet petitioners' burden of proof as to that amount. Although Mr. O'Sullivan noted deposits and withdrawals *378 of like amounts, no explanation was given by petitioners or by Mr. O'Sullivan as to the purpose of such deposits and withdrawals. Moreover, the large number of interaccount transfers made by petitioners during the years in issue makes it difficult to establish that any particular items should be "matched" as nontaxable "redeposits" of withdrawn amounts. Respondent also determined that Hans and Renate Schachenmayr had additional interest income from bank accounts maintained in the name of Ulrich Schachenmayr but over which Hans Schachenmayr had signature authority. Petitioners assert that such accounts and the interest thereon were the property of Ulrich Schachenmayr and on brief argue that "the most telling point about Ulrich" is the fact that he directed petitioners' accountant, Mr. Hoffman, to prepare income tax returns for him, listing interest income of $ 17,000, prior to Agent Bruno's first contact with petitioners. We find it more "telling" that such returns were never filed. Moreover, we note that Mr. Hoffman testified that at least one of the returns was not completed until after Mr. Bruno's contact with petitioners and that such return was not filed due to the advice of *379 the tax lawyers who had been engaged by Hans Schachenmayr. Accordingly, we hold that petitioners have failed to overcome the presumption of correctness attaching to respondent's determination regarding the interest income. Rule 142(a). With respect to Hans and Renate Schachenmayr's 1979 return, petitioners argue that respondent's determination of cash expenditures should be reduced by $ 16,666.99 because such amount was included in their return for taxable year in issue. Petitioners do not dispute that the cash expenditure in question was made, however. As pointed out by respondent, if the amount in question actually was reflected in the appropriate income tax return, petitioners have been given "credit" for such amount through the procedure employed by respondent in computing omitted gross income by way of his bank deposits analysis. Accordingly, respondent's determination is sustained. With respect to H&W Corporation's taxable year ended March 31, 1977, petitioners assert that a deposit in the amount of $ 20,000 made by way of a check from the Royal Bank of Canada constituted a loan from Wolfgang Schachenmayr. The sole evidence offered in support of such assertion is the unsupported *380 testimony of Hans and Wolfgang Schachenmayr. Wolfgang Schachenmayr, however, admitted on direct examination that he did not know what Hans Schachenmayr did with the loan, and on cross-examination admitted that he had no records of his alleged account at the Canadian bank and had made no effort to obtain any such records. Wolfgang Schachenmayr's other testimony -- specifically, that he went to work for Hans Schachenmayr because he had been fired from his job in Canada and lived for several years in a "room-apartment" at the motel with no kitchen -- appears contradictory with his ability and his willingness to extend such a loan. We therefore sustain respondent's determination as to the $ 20,000. Petitioners also assert that the amount of $ 99,390, which was transferred to Ulrich Schachenmayr in West Germany by way of a check from the Royal Bank of Canada, [20] and then transferred back to Hans Schachenmayr (who deposited it in an account in Ulrich Schachenmayr's name), did not represent income of Hans and Renate Schachenmayr or of H&W Corporation. In support of their assertion, petitioners offer the testimony of Hans Schachenmayr (whose name appeared on the check request at the Canadian *381 bank) that his sole involvement in such transaction was to assist a "Mr. Einsiedler" (a guest at Hans Schachenmayr's motel who, according to petitioners, had trouble speaking English) in transferring funds to Ulrich Schachenmayr. We find petitioners' explanation implausible and sustain respondent's determination with respect to the transaction in question as to both Hans and Renate Schachenmayr and H&W Corporation. The other item in dispute which respondent has attributed to both Hans and Renate Schachenmayr and H&W Corporation is a 1979 deposit in the amount of $ 38,880 which petitioners assert represented funds of Ulrich Schachenmayr earmarked for the construction of the Mirror Lake homes. As discussed in connection with respondent's proof of underpayments by H&W Corporation for its taxable year ended March 31, 1979, we do not believe petitioners' assertions. As in the case of the $ 99,390 deposit, petitioners have given us no reason to believe that the $ 38,880 did not represent corporate funds diverted to its shareholder. [21] Accordingly, *382 we sustain respondent's determinations that such amount represented unreported income of both H&W Corporation and Hans and Renate Schachenmayr. Finally, petitioners claim that $ 38,316.79 in cash wages and tips were paid to employees of H&W Corporation during the Olympics and not claimed as a deduction on H&W Corporation's return for its taxable year ended March 31, 1980. Petitioners assert that such amount came from the $ 60,000 in $ 100 bills received by Renate Schachenmayr for the use of the motel facilities during the Olympics and that neither the receipt of such amount nor the payment of compensation out of such amount *383 was reported to Mr. Hoffman for inclusion in the corporation's returns. We find that petitioners have failed to adequately substantiate H&W Corporation's entitlement to any deduction with respect to such alleged payment of cash compensation. Petitioners admit that the amount for which they now claim a deduction was not reflected on the employment tax returns filed by the H&W Corporation, and the only documentary "evidence" of such compensation comes from various slips of paper, most of them handwritten, which Renate Schachenmayr admitted not to have kept in the "normal course of business." On brief, petitioners thus ask us to rely on "Renate's independent recollection of the events" to establish H&W Corporation's entitlement to the deduction. We refuse to do so, especially in light of the circumstances surrounding the alleged payment of compensation, which certainly detract from Renate Schachenmayr's credibility. We note, moreover, that H&W Corporation did claim a deduction of approximately $ 50,000 for wages (as part of its cost of goods sold) on its return for taxable year ended March 31, 1980. Aside from Renate Schachenmayr's testimony, petitioners have presented no evidence *384 indicating that the $ 38,316.79 in issue was not already reflected in the $ 50,000 deduction taken on such return. (4) Additions to Tax Determined Against Wolfgang Schachenmayr
a. Section 6654 Addition
Respondent also determined that petitioner Wolfgang Schachenmayr is liable for additions to tax under section 6654 for taxable years 1977 and 1978 for failure to pay estimated tax. Such addition to tax as to the years in issue is mandatory absent a showing by petitioner that one of the statutorily provided exceptions applies, Recklitis v. Commissioner, 91 T.C. 874, 913 (1988), and section 6654 for such years contains no exception relating to reasonable cause and lack of willful neglect. Petzoldt v. Commissioner, 92 T.C. 661, 702 (1989); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioners have failed to show that any of the exceptions contained in section 6654 apply, [22] *385 and respondent's determination therefore is sustained, reduced to reflect agreed-upon adjustments to petitioner Wolfgang Schachenmayr's corrected taxable income for taxable years 1977 and 1978.
b. Sections 6651(a)(1) and 6653(a) Additions
In his answer, respondent alleged that petitioner WolfgangSchachenmayr is liable for additions to tax under sections 6651(a)(1) and 6653(a) for failure to file a return and for negligence with respect to taxable year 1977. Respondent acknowledges on brief that he bears the burden of proof on such issues. Rule 142(a). We find that respondent has failed to carry such burden. For taxable year 1977, the only adjustments to Wolfgang Schachenmayr's income made in respondent's notice of deficiency were an adjustment for $ 17.00 in unreported interest income and an adjustment for $ 10,933.05 related to H&W Corporation's payment of certain of Wolfgang Schachenmayr's personal expenses. By mutual concession, the parties have agreed that the appropriate amount of unreported income for taxable year 1977 is $ 3,517, consisting of $ 17 in interest income and $ 3,500 as a result of H&W Corporation's payment of Wolfgang Schachenmayr's personal expenses (including meals and lodging). The addition provided by section 6651(a)(1) does not apply where a taxpayer's failure to file a return is "due to reasonable cause and *386 not due to willful neglect." Respondent argues, and we agree, that petitioners have presented no evidence indicating that Wolfgang Schachenmayr's failure to file a return for taxable year 1977 was due to reasonable cause. Such argument, however, ignores the fact that respondent has the burden of establishing the lack of reasonable cause or the presence of willful neglect in the instant case. We find that respondent has failed to do so, and has also failed to establish that any underpayment by Wolfgang Schachenmayr for taxable year 1977 was due to negligence or intentional disregard of rules and regulations. Respondent's arguments concerning Wolfgang Schachenmayr's negligence and failure to file returns generally are inapposite with respect to taxable year 1977, because no deposits into the 932 Account have been attributed to Wolfgang Schachenmayr for such year. [23] The only arguments made by respondent which have any relevancy to taxable year 1977 concern Wolfgang Schachenmayr's failure to keep adequate books and records and respondent's general allegation that Wolfgang Schachenmayr participated in a "scheme" to conceal income with Hans and Renate Schachenmayr. In view of the very *387 small amount of gross income which respondent has attributed to Wolfgang Schachenmayr for taxable year 1977, and in view of the character of such income (consisting almost exclusively of in-kind benefits provided by H&W Corporation), we find such arguments unconvincing and refuse to sustain respondent's assertion of additions to tax under sections 6651(a)(1) and 6653(a). [24]
To reflect the foregoing, Decisions will be entered *388 under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Hans and Renate Schachenmayr, docket No. 4150-86; Wolfgang Schachenmayr, docket No. 4154-86; H&W Motel Corporation, docket No. 4156-86. For convenience, we shall refer to the cases consolidated herein as the instant case.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent has conceded that no addition to tax under sec. 6653(b) is due from petitioner Wolfgang Schachenmayr for the year 1977. Petitioner Wolfgang Schachenmayr failed to file a return for 1977 or 1978. In his answer, respondent alternatively alleged that petitioner Wolfgang Schachenmayr should be held liable for additions to tax under secs. 6651(a)(1) and 6653(a)↩ for the years 1977 and 1978.
4. Petitioner Wolfgang Schachenmayr filed a separate petition for the years 1977 and 1978.↩
5. Petitioners have failed to explain why the Federal income tax returns of H&W Corporation for its years ended March 31, 1979, and March 31, 1980, list Hans Schachenmayr as owning only 70 percent of the common stock of the corporation.↩
6. Up until 1979, the name of the motel was the Holiday Motel. For convenience, however, we shall refer to the motel as the Adirondack Inn throughout the opinion.↩
7. Mr. Hoffman prepared (1) the return of H&W Corporation for its year ended March 31, 1980, (2) the returns of Hans and Renate Schachenmayr for the years 1979 and 1980, and (3) the return of Wolfgang and Martine Schachenmayr for the year 1980. Mr. Hoffman apparently did not prepare the 1979 return of Wolfgang and Martine Schachenmayr.↩
8. Numbers in parentheses represent losses reported for tax purposes.↩
9. See Phillips v. Commissioner, T.C. Memo 1984-133, 1984 T.C. Memo 133, 47 T.C.M. (CCH) 1289, 1299, T.C.M. (RIA) 84133 at 470 ("we need not, and indeed should not, address the correctness of the underlying deficiencies unless and until we find that respondent has carried his burden of establishing fraud.").
10. We note that petitioners have conceded their failure to report certain items as income and have also conceded their entitlement to certain deductions claimed on their returns. The majority of such conceded items, however, are small in amount when compared with the items remaining in dispute, and respondent, except as otherwise noted, has made no serious effort to prove that the underpayments arising out of such conceded items were due to fraud. Accordingly, except as noted below, we consider only the amounts remaining in dispute in determining whether respondent has proven the existence of underpayments due to fraud.↩
*. The same items in the amounts of $ 99,390 and $ 38,880 have been attributed to both H&W Corporation and Hans and Renate Schachenmayr in respondent's notices of deficiency. Respondent claims that such amounts represent income of H&W Corporation which was diverted to its shareholder's personal accounts. See Truesdell v. Commissioner, 89 T.C. 1280, 1300↩ (1987).
11. We do not here address respondent's proof as to Hans and Renate Schachenmayr's failure to report the deposit of $ 38,880 made during 1979, as we already have found the existence of an understatement in the amount of $ 41,620 for such year. As noted above, respondent has attributed the $ 38,880 to both Hans and Renate Schachenmayr and H&W Corporation as corporate income diverted to the personal use of its shareholder. We therefore will deal with the deposit infra↩.
12. We do not here address the $ 99,390 deposit attributed as income to Hans and Renate Schachenmayr for 1980, as we already have found the existence of an understatement of taxable income by Hans and Renate Schachenmayr for such year. We therefore will deal with that deposit infra↩.
13. For its taxable year ended March 31, 1980, petitioner H&W Corporation has conceded its entitlement to a deduction in the amount of $ 32,046.76 claimed for an accrued interest liability due to Maria Schachenmayr.↩
14. In its petition, H&W Corporation asserted that the $ 16,000 was "inadvertantly [sic] not reported on petitioner's tax return." We find the deposit of such funds in an overseas account inconsistent with "inadvertence."↩
15. We need not address here the deposit of $ 99,390 which respondent has attributed as income to H&W Corporation for its taxable year ended March 31, 1980, as respondent has proven the existence of an understatement for such year.
16. Respondent has conceded that the fraud addition does not apply to Wolfgang Schachenmayr for taxable year 1977.↩
17. Wolfgang also failed to file a return for 1977, but respondent has conceded the section 6653(b)↩ issue for such year.
18. Petitioners have conceded that funds from such postal checking account were used to pay interest on the $ 100,000 loan, referred to above, made to Hans Schachenmayr by a West German bank.↩
19. As Wolfgang Schachenmayr has conceded his failure to file any return for the 1977 year, the statute of limitations is open for that year notwithstanding respondent's concession with respect to sec. 6653(b). Sec. 6501(a), (c)(3). Because we found fraud in our holdings above, we need not address respondent's alternative contentions that the statute of limitations is open under sec. 6501(e)(1)↩ with respect to the joint returns of Hans and Renate Schachenmayr and Wolfgang and Martine Schachenmayr for 1979 and 1980, and with respect to H&W Corporation's return for its taxable year ended March 31, 1980.
20. The original check was in the amount of $ 99,500. After subtraction of bank service charges, $ 99,390 was transferred back to Hans Schachenmayr.↩
21. Petitioners' sole argument concerning the $ 99,390 and $ 38,880 deposits is that such amounts belonged to Ulrich Schachenmayr and Mr. Einsiedler. Petitioners have made no alternative arguments directed at respondent's attribution of such items to both H&W Corporation and Hans and Renate Schachenmayr. No argument is made, for example, that such amounts represented compensation by the corporation or dividends limited by the corporation's earnings and profits. See Truesdell v. Commissioner, 89 T.C. 1280↩ (1987). Accordingly, we have not considered such issues.
22. We note that, as applicable to the years in question, sec. 6654 contained no exception related to "small amount" of tax. See present sec. 6654(e)(1)↩.
23. We note that respondent also has alleged alternatively that Wolfgang Schachenmayr is liable for such additions for taxable years 1978 through 1980. We need not consider such arguments in view of our findings regarding the applicability of the sec. 6653(b)↩ addition for such years.
24. See Swan v. Commissioner, T.C. Memo 1985-521 (no negligence addition imposed where state senator did not understand that value of misappropriated youth services would constitute taxable income); Barbuto v. Commissioner, T.C. Memo 1982-587 (additions to tax under secs. 6651(a)(1) and 6653(a)↩, raised for the first time in respondent's answer, denied where respondent failed to show that taxpayer had sufficient gross income to require filing of a return under sec. 6012 as applicable).